[Cite as *In re Dissolution of Marriage of Kelly*, 2011-Ohio-2642.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE DISSOLUTION OF THE<br>MARRIAGE OF: | ) ) ) ) | CASE NO. 09 CA 863 |
| ROBERT T. KELLY | ) ) | |
| PETITIONER-APPELLEE, | ) ) | |
| AND | ) | OPINION |
| KYDE L. KELLY, | ) ) | |
| PETITIONER-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Civil Appeal from Common Pleas
                   Court, Case No. 05 DRC 24457.

JUDGMENT:            Reversed.

APPEARANCES:
For Petitioner-Appellee:       Attorney Emanula Agresta
                   100 N. Fourth Street
                   Suite 300
                   Steubenville, OH  43952

For Petitioner-Appellant:      Attorney Christopher A. Maruca
                   Attorney Daniel P. Osman
                   The Maruca Law Firm
                   201 E. Commerce St., Suite 316
                   Youngstown, OH  44503

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite

Hon. Gene Donofrio

Dated: May 27, 2011

DeGenaro, J.

{¶1} Petitioner-Appellant, Kyde L. Kelly (nka Jones) appeals the decision of the Carroll County Court of Common Pleas modifying her parental rights with regard to the parties' minor child, Nathan Kelly, following Kyde's notice of intent to relocate from Ohio to Wyoming and Petitioner-Appellee Robert T. Kelly's motion to modify parental rights. On appeal, Kyde first argues the trial court abused its discretion by permitting a witness to testify as an expert about the long-term ramifications of Nathan relocating. Second, she argues the trial court abused its discretion by granting Robert's motion to modify parental rights. Third and alternatively, she argues the trial court abused its discretion by failing to enter a conditional judgment entry which would have allowed her to maintain custody as long as she did not relocate out of state.

{¶2} Upon review, the court abused its discretion in granting Robert's motion to modify parental rights because a mere intention or desire to relocate does not constitute the requisite change in circumstances. As our resolution of this issue is dispositive of the appeal, Kyde's remaining assignments of error are moot. Thus, the judgment of the trial court is reversed.

### Facts and Procedural History

{¶3} Kyde and Robert were married on May 3, 2003. Nathan was born as issue of the marriage on September 4, 2004. Both parties reside in East Liverpool where Nathan has resided since birth. Kyde works as a prosecuting attorney in Lisbon. Robert works as a mortgage loan officer in Pittsburgh. The parties filed a petition for dissolution of marriage, and the decree of dissolution issued on December 16, 2005, designated Kyde as the residential/custodial parent. The decree did not place any restrictions upon the residential parent's ability to relocate. Further, Robert was granted liberal parenting time and he agreed to pay child support. As both Kyde and Robert were employed full-

time, they relied on their parents to provide child care during the workday. As such, Nathan formed close relationships with both sets of grandparents.

**{¶4}** Following their dissolution, the parties made some attempts at reconciliation. Inasmuch as the parties were together more often, sometimes overnight, Robert's parenting time with Nathan was more liberal. However, by August 2008 attempts at a permanent reconciliation failed, as Robert chose to pursue a relationship with Tammy Bauer.

**{¶5}** Because Nathan would be enrolled in preschool, the trial court issued an agreed judgment entry modifying parental rights on September 29, 2008. Kyde remained the residential/custodial parent, and Robert's parenting time and child support obligation were modified accordingly.

**{¶6}** At the time the parties' attempts to reconcile failed, Kyde began a long-distance relationship during the fall of 2008 with Craig Jones, a prosecuting attorney in Wyoming. Between January 2009 and August 2009, Craig visited Kyde in Ohio several times for a total of about 30 days. Craig spent time with Nathan during these visits. Kyde also took Nathan to meet Craig's mother in Indiana. Craig and Kyde were engaged in March 2009.

**{¶7}** Kyde filed a notice of intent to relocate, stating she intended to relocate to Cheyenne, Wyoming around August 1, 2009 and planned to take Nathan with her. Although Kyde later filed a "Proposed Long-Distance Companionship Order," she never formally moved the court to modify Robert's parenting time rights pursuant to R.C. 3109.051(C). In response, Robert filed a motion for reallocation of parental rights and responsibilities, requesting that he be designated the residential/custodial parent. He stated that the change in circumstances was Kyde's intent to relocate with Nathan to Wyoming, along with Nathan's reactions to the impending move. He claimed it would not be in Nathan's best interest to be taken away from his support network of family and friends.

**{¶8}** On July 23, 2009, Kyde and Craig married in Wyoming in a private, civil ceremony. Kyde did not bring Nathan to the wedding because she did not have

permission from the court to take him out of state during the pendency of the proceedings. Craig and Kyde entered into a lease agreement for a house in Wyoming. Kyde chose a school for Nathan there but did not enroll him.

{¶9} During two days of evidentiary hearings, both parties put on extensive evidence. At the beginning of the hearing, the parties jointly requested that the trial court enter a conditional judgment entry that would allow Kyde to maintain custody in the event she decided not to move to Wyoming. In other words, they requested that in the event the court determined that the relocation, coupled with other circumstances, necessitated a change in custody, that the court issue a conditional ruling maintaining the status quo in the event Kyde chose not to move. The court denied this request out of concerns that it would be "prejudging the case." The court further stated that it viewed the trial as "an all or nothing situation," and that therefore it would not issue a conditional ruling.

{¶10} In support of his case, Robert presented the following witnesses: himself; Kyde; his neighbor and friend Anson Wiegard; his live-in girlfriend Tammy Bauer; his father, Bob Kelly; and Terry Dehamer, a licensed counselor and social worker. Kyde presented the following witnesses: herself; her new husband Craig Jones; her co-worker, Tammy Riley-Jones (no relation to Craig); and her pastor Eric Edwards.

{¶11} Relevant to the issues on appeal, Kyde testified about her courtship with Craig and subsequent marriage. Kyde stated that she was still serving as a prosecutor and that she did not have a job in Wyoming. She intended to be a stay-at-home mom, at least until February 2010 when she could apply for admission by motion to the Wyoming bar. She said Craig's current income could support them, and that Craig was also being considered for a judgeship, which is merit-based in Wyoming. She said that in the event that she did return to work, she would want a job that would allow her to take Nathan to school and pick him up each day. For example, she could continue to do part-time bankruptcy work, as she does now, from home in Wyoming.

{¶12} Further, Kyde testified that Craig sought positions with offices in surrounding counties, but did not receive any favorable responses. Craig has no children of his own, is recently divorced and has no family in Wyoming. His family is from Indiana and Kyde

and Nathan visited them in May 2008.

{¶13} Kyde testified that she had chosen a parochial school for Nathan to attend in Wyoming, but had not enrolled him. She also found doctors and a dentist for Nathan. In July 2008, Kyde and Craig entered into a lease with purchase option for a house in Wyoming. However, Kyde stated that the landlord understood the situation, and would allow them to get out of the lease by forfeiting the security deposit.

{¶14} Kyde said that if she maintains custody and moves to Wyoming she would facilitate communication between Robert and Nathan via Skype. She testified she would foster Nathan's relationships with his family back in Ohio.

{¶15} Craig Jones testified, similar to Kyde, about his background, career, income and rental home. His first plan had been to move to Ohio to be with Kyde and Nathan but he could not find a job because the area was much more "economically challenged" than the Cheyenne, Wyoming area. Craig believed he had bonded with Nathan. He said he was confident that if Kyde relocated with Nathan she would continue to facilitate visitations between Nathan, Robert and his extended family.

{¶16} Robert then testified. He said that if granted custody he would continue to foster relationships between Nathan and his extended family, including Kyde's family. He confirmed that both sets of grandparents played significant roles in the care-taking of Nathan. Robert commutes 100 miles roundtrip to Pittsburgh each day for work. Even though it would have been easier for him to relocate there, he has not because he wants to stay close to Nathan. If granted custody, he said he had no plans to locate outside the area as he wished for Nathan to grow up surrounded by extended family. He discussed his work schedule and said he talked to his company and could have a more flexible schedule if he got custody of Nathan.

{¶17} Exhibits were presented in furtherance of each side's position. Both parties submitted proposed findings of fact and conclusions of law, pursuant to the court's directive at trial.

{¶18} On November 6, 2009, the trial court issued a judgment entry including findings of fact and conclusions of law designating Robert the residential parent and legal

custodian of Nathan and granting Kyde long-distance visitation. Kyde filed a notice of appeal as well as a motion to stay the judgment pending appeal. In support, she stated she still resides in Columbiana County and had no intention of leaving without Nathan. The trial court granted the stay for that reason.

## Modification of Parental Rights

{¶19} Because resolution of Kyde's second assignment of error is dispositive of this appeal, we will address it first. Kyde asserts:

{¶20} "The trial court's judgment granting the motion to modify parental rights was an abuse of discretion."

{¶21} A trial court has broad discretion in its determination of parental custody rights since it has the authority to make an equitable decision based upon the facts and circumstances in each case. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Therefore, a trial court's custody determination should not be disturbed unless it constitutes an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178.

{¶22} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.

{¶23} That said, although a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04. Id.

{¶24} R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities, and states, in pertinent part:

{¶25} "The court shall not modify a prior decree allocating parental rights and

responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

**{¶26}** "* * *

**{¶27}** "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

**{¶28}** Accordingly, three elements must be proven to change the residential parent status from one parent to the other: (1) there must be an initial showing of a change in circumstances, (2) if circumstances have changed, the modification of custody must be in the children's best interests, and, (3) any harm to the children from a modification of the plan must be outweighed by the benefits of such a modification. "Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest." *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604, 737 N.E.2d 551 (Seventh District).

**{¶29}** In modifying custody to Robert, the court discussed in detail each of the elements and concluded that Robert had proven each one. Kyde challenges each of these determinations. Her first argument, that there has not been a change in circumstances, is meritorious and therefore dispositive of this appeal.

**{¶30}** This court has previously noted that [a]lthough R.C. 3109.04 does not set forth a definition of the phrase "change in circumstances", Ohio courts have generally held that the phrase is intended to denote "an event occurrence, or situation which has a material and adverse effect upon a child." *Rohrbaugh* at 604, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 3 OBR 479, 445 N.E.2d 1153.

{¶31} A mere desire or intent to relocate does not constitute the requisite change in circumstances. Rather, there must be an actual relocation, *Masters v. Masters* (1994), 69 Ohio St.3d 83, 630 N.E.2d 665; *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, or in at least one case, substantial steps taken in furtherance of an imminent relocation. *DeVall v. Schooley*, 5th Dist. No. CT2006-0062, 2007-Ohio-2582.

{¶32} In *Masters,* the Ohio Supreme Court held that the trial court abused its discretion by changing the custodial parent from mother to father where the only evidence supporting its conclusion was the mother's filing of a motion to remove the child from the state. *Masters*, 69 Ohio St.3d at 85. The court reached this conclusion because filing the motion to relocate merely reflected the mother's *desire* to leave the state and did not on its own constitute a change in circumstances. Id. at 86.

{¶33} In *Campana*, the father sought a change in custody due to the mother's contemplation of remarriage and relocation. The mother had filed a notice of intent to relocate with an accompanying motion to modify the father's parenting time to the court's standard long distance visitation order. The father objected to the relocation and the modification of parenting time and filed a motion to reallocate parental rights so that he would be designated the residential parent. The trial court denied the father's motion for reallocation of parental rights. On appeal, this court affirmed, concluding there was no change in circumstances which would warrant the change in custody.

{¶34} "The father did not allege that [the mother] will move even in the absence of court modification of his visitation, and he does not seek a custody change on any basis other than his opinion that his son should not move to Wyoming. As the Supreme Court held in *Masters*, the mother's mere filing of the notice for the court's input is not a changed circumstance that the father can use for a change of residential parent status." *Campana* at ¶34.

{¶35} On the other hand, in *DeVall,* although the mother claimed she was still "in the process of moving," the court of appeals affirmed a change in circumstances based upon the relocation:

{¶36} "We recognize, in the case sub judice, that appellant testified she was still in

the 'process of moving' at the time of the evidentiary hearing. Tr. at 25-27. Some of her furniture, including her bed, remained in Morgantown. Tr. at 26. Appellant further stated that she had not yet commenced her new job at a retail store in King George. Tr. at 16. Appellant also indicated she had yet to decide on a doctor or dentist for the child. Tr. at 25. However, she had already enrolled Susan in school in Virginia for the upcoming fall, and, as the trial court noted, had withdrawn the child from her current school, telling the administrators Susan would not return in the fall. Tr. at 25, 44; Judgment Entry at 2. Moreover, the trial judge specified that he had reviewed evidentiary exhibits consisting of photographs of appellant's new house in Virginia and of Susan standing in said house in her furnished bedroom. Judgment Entry at 2.

**{¶37}** "Upon review of the record, we are not inclined to substitute our judgment for that of the trial court on the issue of the status of appellant's relocation. We therefore hold that the trial court acted within its discretion in finding that the 'marriage and relocation' in this matter was a fait accompli, thus distinguishing this case from the scenario addressed by the Ohio Supreme Court in *Masters*." *DeVall* at ¶16.

**{¶38}** This case is more akin to *Campana* and *Masters* than to *DeVall*. Kyde testified from the very beginning of trial that she would not move to Wyoming without Nathan. She had not quit her job with the prosecutor's office, and had not moved out of her house or moved any of her personal belongings to Wyoming. She did choose a school for Nathan in Wyoming, however, she had not enrolled him there. And although she and Craig did enter into a lease agreement for a house in Wyoming, they testified that the landlord would let them break the lease without significant financial consequences beyond forfeiting the security deposit.

**{¶39}** Tellingly, the trial court's findings of fact are fraught with conditional language about the move: "Mother offered testimony that *if allowed to relocate* * * *." "Kyde Kelly's *proposed move* to Wyoming * * *."

**{¶40}** Considering that no actual relocation had taken place and that Kyde testified she would not move to Wyoming without Nathan, the trial court abused its discretion in finding a change in circumstances in this case. Kyde's second assignment of error is

meritorious.

{¶41} The lack of a change in circumstances ends our inquiry. Thus, we do not reach the other two R.C. 3109.04(E)(1)(a)(iii) elements, analyzing the best interests of the child, and determining whether the advantages from the change outweigh the harm. This analysis need not be undertaken because we have concluded that there was not a change in circumstances. See, e.g., *Adams v. Adams*, 4th Dist. No. 05CA2, 2005-Ohio-4588, at ¶15 ("[B]ecause a change in circumstances has not occurred, we need not address appellant's arguments that granting his motion to modify the prior allocation of parental rights and responsibilities would serve the child's best interests and that the benefits of modifying custody outweighs any harm.")

### Mootness

{¶42} Kyde's first and third assignments of error assert respectively:

{¶43} "The trial court abused its discretion in permitting Terry Dehamer to testify."

{¶44} "The trial court abused its discretion by failing to enter a conditional judgment entry which would allow Appellant to maintain custody as long as she did not relocate to Wyoming."

{¶45} Our favorable resolution of the second assignment of error renders these remaining assignments of error moot and dispenses with our need to address them. See App.R. 12(A)(1)(c).

{¶46} The trial court abused its discretion by modifying parental rights in this case. Robert did not prove the required change in circumstances since Kyde had not actually relocated and maintained she would not relocate without Nathan. The remaining assignments of error are rendered moot based upon our determination that the trial court's reallocation of parental rights was improper. Accordingly, the judgment of the trial court is reversed.

Waite, P.J., dissents. See dissenting opinion.

Donofrio, J., concurs.

Waite, P.J., dissenting.

{¶47} I must dissent in this matter because I believe it should be decided using the usual standard of review instead of what appears to be a de novo standard applied by the majority opinion. As courts of appeal judges, we routinely affirm decisions that may not be identical to the decisions we would have made had we been in the shoes of the trial court judge. Given our normal deference to the findings of the trier of fact, there is ample evidence of record here to support the conclusion reached by the trial court that a change of circumstances occurred. This is not a case wherein one parent sought to prove that a change in circumstances occurred based on a mere request to plan a move by the other parent. Appellant has in fact remarried a prosecuting attorney who lives in Wyoming and they have started a new life together in Wyoming. Although it is possible to "cherry pick" certain facts from the record in order to come to a different conclusion than the trial court, this is not how we traditionally review child custody decisions. The majority appears inclined to usurp the role of the trier of fact and virtually ignore the evidence supporting the trial court's decision. Thus, I dissent because there is substantial evidence in the record supporting the conclusions reached by the trial court pursuant to our normal standard of review.

{¶48} The standard of review in this case is correctly cited in the majority opinion. The trial court has broad discretion in making child custody determinations. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. "[I]t is inappropriate in most cases for a court of appeals to independently weigh evidence * * *. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the

nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846.

**{¶49}** It is also true that the trial court's discretion is not absolute in child custody matters. Pursuant to R.C. 3109.04(E)(1), in order to modify a decree allocating parental rights and responsibilities the trial court must find that a change in circumstances has taken place since the issuance of the prior decree and only then proceed to determine whether modification is in the best interests of the child. The Ohio Supreme Court, in the syllabus of *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159, held:

**{¶50}** "1. R.C. 3109.04 requires a finding of a 'change in circumstances.' Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion.

**{¶51}** "2. In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change."

**{¶52}** Although the majority opinion cites the correct standard of review, in the majority's analysis, the facts that support the trial court's judgment are either ignored or discounted.

**{¶53}** The majority concludes that this case is directly analogous to *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, which (coincidentally) involved a mother's attempt to relocate to Wyoming with her child, as in the instant appeal. In

*Campana*, the mother, who was the child's residential parent, filed a notice of intent to relocate with the child to Wyoming, along with a motion to modify the father's visitation. She intended to marry a man from Wyoming if the court allowed her to relocate with her son. The father filed a motion to reallocate parental rights, seeking to be designated as the child's residential parent. The father argued that the mother's intent to relocate along with the request to modify visitation constituted sufficient change in circumstances to allow him to be automatically designated the residential parent. The trial court denied the father's motion and ultimately allowed the mother to relocate with the child. This judgment was upheld on appeal. We held that the filing of a notice to relocate and a request for modification of visitation did not constitute, by themselves, a change in circumstances that could support a reallocation of parental rights. Id. at ¶31-35, citing *Masters v. Masters* (1994), 69 Ohio St.3d 83, 630 N.E.2d 665.

{¶54} Although many aspects of *Campana* are certainly useful in analyzing the instant appeal, it is completely distinguishable from the instant appeal in one very important respect. In *Campana*, the trial court found no change in circumstances occurred and denied the father's motion to reallocate parental rights. This is the decision that was affirmed on appeal. We accepted the facts that supported the trial court's judgment and deferred to that judgment. In the instant appeal, the trial court ruled in favor of the father, finding that there was a change in circumstances based on the facts presented. Hence, we are called on to accept, if reasonable, the facts that support the trial court's conclusion that a change of circumstances has taken place if the evidence of record supports that conclusion. The majority does not accept the facts as found by the

trial court. Hence, it is important to recognize that *Campana* should also be distinguished on factual grounds. In *Campana*, the mother had not yet remarried when the motion to reallocate parental rights was heard. In this case, Appellant has already remarried. Importantly, in *Campana* the only facts that the father relied on to support reallocation of parental rights were the mere filing of the notice of intent to relocate and the motion to modify visitation. In this appeal, there are numerous other facts, including that Appellant had substantially already begun her move to Wyoming and had gone beyond merely requesting permission for such a move on the part of her child.

{¶55} Again, absent some abuse of discretion, we are bound to accept the facts as found by the trial court in deciding whether that court erred in finding a change in circumstances. So long as the record reasonably supports the trial court's determination, we should affirm that decision. Unlike in the *Campana* opinion, where the trial court held that no change in circumstances had already occurred and this decision was found to be supported by the record and affirmed, the majority opinion here reverses the trial court's conclusion that there was a change in circumstances, relying for the most part on their own review and reweighing of facts using only those facts that undermine or discredit the trial court's findings. For example, the majority emphasizes the importance of Appellant's testimony that she was not going to move to Wyoming without her son, even though she clearly contradicted this testimony in another part of the transcript. The majority notes that she did not actually purchase a house in Wyoming, had not yet quit her job as prosecutor in Ohio, and had not actually enrolled her child in a new school. These are certainly interesting parts of the record, but the trial court heard other testimony that could

easily have outweighed, to that court, the facts cited by the majority. First, Appellant actually remarried an attorney, Craig Jones, who lives in Wyoming, and this fact is not in dispute. The wedding itself took place in Wyoming. Although remarriage alone is not normally sufficient to support a change in circumstances, it is always an important consideration when reviewing whether a change in circumstances has occurred. See, e.g., *Wilson v. Wilson*, 4th Dist. No. 09CA1, 2009-Ohio-4978, ¶26; *Weisgarber v. Weisgarber*, 5th Dist. No. 2008CA0067, 2009-Ohio-20, ¶45; *Bracy v. Bracy*, 3d Dist. No. 1-08-15, 2008-Ohio-3888, ¶15.

**{¶56}** Second, because Appellant has remarried she and her new husband have many reasons for making Wyoming their home instead of Ohio. The record reflects that Attorney Craig Jones is a career prosecutor who has lived in Wyoming for fifteen years and is being considered for an appointed judgeship there. Attorney Jones earns substantially more in Wyoming than Appellant does in Ohio. Attorney Jones testified that he would lose some of his retirement benefits if he quit his job in Wyoming at this time. (Tr., p. 267.) Attorney Jones looked for work in Ohio but received no interviews or job offers. Thus, it is difficult to credit Appellant's statements that she has not and will not move to Wyoming when her husband is firmly entrenched in a successful career in Wyoming and admittedly has no job prospects in Ohio.

**{¶57}** All of the facts relied on by the majority are undermined by other facts in the record. It is true that Appellant has not purchased a new home in Wyoming, but she and her new husband have leased a house there, with an option to buy. They have not enrolled her son in a new school, but they have found a new school for her son in

Wyoming and Appellant decided not to enroll him for kindergarten in Ohio. Appellant had not yet left her job as prosecutor, but it appears that she quit her teaching position as a professor at Kent State University. Appellant had been a faculty member since 2005, but she testified that she turned down her latest course assignment. (Tr., p. 67.) The fact that Appellant does not yet have a new job in Wyoming is explained by the fact that she cannot become licensed immediately in Wyoming due to procedural issues in the bar application process there. (Tr., pp. 69-71.) Appellant testified that she looked for legal work in Wyoming and had a job offer, but it fell through based on her inability to become immediately admitted to the bar in Wyoming. Although Appellant currently does not have a job in Wyoming, she did testify that it was in her family's best economic interest to go to Wyoming. (Tr., p. 75.)

{¶58} While Appellant's testimony contains many factual assertions that could have been interpreted by the trial court to mean that she had not fully or substantially moved to Wyoming, normally we must presume that the trial court did not believe or rely on testimony that contradicts the final judgment of the court. In other words, we traditionally leave matters of credibility to the trier of fact. In this case we have more than a presumption to rely on, because the trial judge actually states that he did not believe some of Appellant's testimony. For example, on page 7 of the court's final judgment entry it states: "The Court was not convinced * * * that Kyde L. Kelly would be a 'stay at home' mom as she testified she would be." (11/6/09 J.E., p. 7.) The court did not find this part of Appellant's testimony to be credible, hence it is not difficult to infer that the trial judge may have had credibility issues with other parts of her testimony.

{¶59} The majority particularly emphasizes Appellant's testimony that she would not move to Wyoming unless her son was able to come with her. Yet, in a different part of the trial transcript, Appellant gave quite a different response to the same question:

{¶60} "THE COURT: * * * are you telling me that you won't leave this area if your son doesn't go?

{¶61} "MRS. KELLY-JONES: No. No. I'm telling you that I've been the residential parent for my son his whole entire life. I don't see why there should be any change of that status. * * *" (8/26/09 Tr., p. 13.)

{¶62} It is certainly possible that the trial court discredited Appellant's assertion that she would not complete her move to or stay in Wyoming without her son when she herself gave conflicting testimony on the subject.

{¶63} Appellant also disputes the trial court's conclusion that the change of circumstances was harmful to the child. Appellant contends that there is no basis for this conclusion, but the record contains evidence to the contrary. The trial court concluded that the 1,300 mile distance between Wyoming and Ohio would "destroy the minor child's life as it was before the move." (11/6/09 J.E., p. 4.) The court also noted that because both parents work, both sets of grandparents are intimately involved in the boy's life and help raise him, and this support would obviously disappear if he moved to Wyoming. The court clearly stated that "Nathan has had at least six if not seven, de facto parent figures in his life during the past six years" and most of these would disappear if he moved from Ohio to Wyoming. (11/6/09 J.E., p. 6.) The loss of the support network was a major part of the court's decision and is fully supported by the record.

**{¶64}** Although the majority likens this case to *Campana v. Campana*, cited earlier, it is much more closely related to *DeVall v. Schooley*, 5th Dist. No. CT2006-0062, 2007-Ohio-2582. In *DeVall*, the mother had been designated as the residential parent. She was living in Morgantown, West Virginia, but filed a motion to relocate to King George, Virginia. The father subsequently filed a motion to modify parental rights so that he would be named as the residential parent. Upon hearing the matter, the court determined that the mother had actually remarried, moved some of her furniture to Virginia, prepared a furnished bedroom for the child in the new house, enrolled the child in school in Virginia for the upcoming fall, and had withdrawn the child from his current school in Morgantown. The trial court determined that these factors outweighed the fact that the mother had not yet found a new job in Virginia. The trial court found that a change in circumstances had taken place and that it was in the child's best interest for the father to become the residential parent. This judgment was upheld on appeal. The Fifth District held that "the trial court acted within its discretion in finding that the 'marriage and relocation' in this matter was a fait accompli * * *." Id. at ¶16.

**{¶65}** As in the *DeVall* case, we are called up to review a judgment in which the trial court found that a change in circumstances had occurred, and there are ample facts in the record that support the judgment of the trial court. In both cases, there are many facts supporting a change in circumstances beyond the mere filing of an intent to relocate or a motion to modify visitation. While there are certainly facts which may lead to a contrary determination and from which may have, ourselves, reached a contrary determination, we should follow the type of analysis that occurred in *DeVall* and every

other case of this nature and affirm the judgment of the trial court based on the substantial evidence in the record supporting that judgment. For all these reasons, I must dissent from the opinion reached by the majority.