[Cite as *Sunseri v. Geraci*, 2012-Ohio-1470.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JENNIFER L. SUNSERI fka GERACI, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-189 |
| | ) | |
| MICHAEL GERACI, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas, Domestic Relations Division of Mahoning County, Ohio Case No. 09DR68

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee          Attorney Mark Lavelle
                                1045 Tiffany South, Suite No. 3, Youngstown, Ohio 44503

For Defendant-Appellant         Attorney James S. Gentile
                                42 N. Phelps Street
                                Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: March 27, 2012

DONOFRIO, J.

{¶1} Defendant-appellant, Michael Geraci, appeals from a Mahoning County Common Pleas Court, Domestic Relations Division decision denying his motion to reallocate parental rights and responsibilities.

{¶2} Appellant and plaintiff-appellee, Jennifer Sunseri, were married on June 25, 1999. Three children were born as issue of the marriage: Leah (d.o.b. 5/21/02); Gianna (1/17/04); and Karli (8/25/07). The trial court granted the parties a divorce on September 30, 2009. Per the terms of the separation agreement that was made a part of the divorce decree, the court designated appellee as the children's residential parent. Appellant was granted "reasonable and liberal" parenting time not less than the standard visitation order.

{¶3} On February 3, 2010, appellee filed a notice of intent to relocate to Jacksonville, Florida with the children. Her stated reason was a full-time employment opportunity. Shortly thereafter, appellant filed a motion to reallocate parental rights and responsibilities to designate him as the residential parent.

{¶4} A magistrate held a hearing on the competing motions where he heard testimony from the parties and various family members. The magistrate granted appellee's motion for relocation and denied appellant's motion to reallocate parental rights and responsibilities. Appellant filed objections to the magistrate's decision arguing that the magistrate failed to consider all of the changes in circumstances he had alleged, other than appellee's proposed move to Florida. The trial court found appellant's objections to have merit. Consequently, the court remanded the matter to the magistrate for a further hearing.

{¶5} Before the hearing, appellee and the children moved to Jacksonville, Florida.

{¶6} At the hearing, the magistrate once again heard from the parties. This time the magistrate addressed all of appellant's alleged changes in circumstances. Once again though, the magistrate concluded that there was not a sufficient change in circumstances. The magistrate, therefore, denied appellant's motion to reallocate parental rights and responsibilities. Appellant once again filed objections to the magistrate's decision arguing that the evidence supported a change in

circumstances. The trial court overruled appellant's objections. It adopted the magistrate's decision and entered judgment accordingly.

{¶7} Appellant filed a timely notice of appeal on December 28, 2010.

{¶8} Appellee has failed to file a brief in this matter. Therefore, we may consider appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain that action. App.R. 18(C).

{¶9} Appellant now raises a single assignment of error, which states:

{¶10} "THE TRIAL COURT ERRED IN FAILING TO FIND A CHANGE OF CIRCUMSTANCES OCCURRED PURSUANT TO R.C. 3109.04E(1)(A) [sic.] IN THE WITHIN MATTER THUS PERMITTING MODIFICATION OF RESIDENTIAL STATUS AND BY FAILING TO STRICTLY FOLLOW STATUTORY AND CASE LAW STANDARDS AS SET FORTH IN SAID SECTION."

{¶11} Appellant argues that appellee's out-of-state move along with the other factors he presented constituted a change in circumstances warranting a change in custody. For support, he asserts that the move to Florida would result in the children being estranged from both sides of their extended family who were involved in their lives. He further asserts that the move would take them away from an active, responsible father. And appellant argues that appellee reduced his companionship time in anticipation of her planned relocation. Finally, he takes issue with the fact that the magistrate concluded that even if he were to find that there was a change in circumstances, he would still deny appellant's motion for reallocation of parental rights. Appellant argues that the magistrate did this in an attempt to protect his decision from the court's review.

{¶12} R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus (1990); *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75 Ohio

St.3d 121, 124, 661 N.E.2d 1008 (1996). This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} R.C. 3109.04(E)(1)(a) provides:

{¶14} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶15} "* * *

{¶16} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶17} Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the court is required to find (1) that a change in circumstances has occurred since the prior custody order; (2) that the change in custody is in the child's best interests; and (3) that the benefits of the change in custody outweigh the harm caused by the change. *Vella v. Vella*, 7th Dist. No. 10-JE-7, 2011-Ohio-1182, ¶23.

{¶18} The first hearing in this matter took place on April 28, 2010. At the time of the hearing, appellee and the children were living with appellee's mother in Boardman, Ohio.

{¶19} Appellee testified that since the children were born, she had been a stay-at-home mom and their primary caretaker. (Apr. Tr. 186-87). She testified that

she filed a notice of relocation because of a full-time employment opportunity in Jacksonville, Florida with Quick Stop Recycling that pays $45,000 a year. (Apr. Tr. 16-17, 219). She stated that her boyfriend, Joe Indriolo, lives in Florida and a friend of his told her about the job in a human resources position. (Apr. Tr. 18-19, 219). Appellee stated that her schedule would be eight to four, Monday through Friday. (Apr. Tr. 220). She stated that the two older children would be in school and she would hire a babysitter for the youngest child. (Apr. Tr. 221).

{¶20} Appellee stated that she has a degree in teaching and that she works at Boardman schools part-time as a tutor. (Apr. Tr. 17-18). From that employment, she earns $12,000 a year. (Apr. Tr. 36). However, she stated that the government funding was not going to be available to fund her position in the upcoming school year and so she would be unemployed. (Apr. Tr. 191). Appellee further testified that she started a small photography business where she earns a couple thousand dollars a year. (Apr. Tr. 191-93). Additionally, appellee receives child support and spousal support totaling $32,400 per year. (Apr. Tr. 36).

{¶21} Appellee further testified that she planned to rent a house from Indriolo when she moved to Florida. (Apr. Tr. 27).

{¶22} The divorce decree states that appellant shall have liberal and reasonable visitation, not less than the standard order of visitation. Appellee testified that prior to the divorce, she allowed appellant to exercise more visitation with the children but that since the divorce she had followed the standard order of visitation. (Apr. Tr. 40-41).

{¶23} Appellee also admitted that appellant found marijuana in her house. (Apr. Tr. 42). She testified that it belonged to her sister. (Apr. Tr. 42). Appellee further testified that she takes medication for anxiety. (Apr. Tr. 43). But she stated that she had been taking this medication since 2007, well before the divorce. (Apr. Tr. 199). Appellant admitted that he found these things in appellee's house when he was going through appellee's belongings even though he was not supposed to be in the house. (Apr. Tr. 107-109).

**{¶24}** Appellant testified that he travelled to Florida to find information about appellee's potential employment. (Apr. Tr. 70). He stated that the business only appeared to have four or five employees, that the building simply housed trash bins, and that there was no human relations director. (Apr. Tr. 71-74).

**{¶25}** When asked what constituted a change in circumstances, appellee stated that while the parties were separated, but prior to the divorce, everything was cordial between them and appellee allowed him liberal visitation with the children. (Apr. Tr. 84-86). However, after the divorce, appellant testified that appellee has held him to the standard order of visitation and there is no communication between the parties. (Apr. Tr. 86, 88-89). He also stated that the children call him crying because they want to sleep at his house or want him to take them to school. (Apr. Tr. 87).

**{¶26}** Appellant further testified that both parties' extended families are very involved with the children, especially the children's grandparents. (Apr. Tr. 94).

**{¶27}** Additionally, appellant presented several witnesses, including his aunt, brother, and stepfather, who all testified he is a loving father and has a great relationship with the children. (Apr. Tr. 55-56, 164-65, 183).

**{¶28}** The children's guardian ad litem (GAL) also filed a report and testified. The GAL found that both parties are very good parents who love their children. (Apr. Tr. 237). She opined that the children are very close to both of their parents and are well taken care of. (Apr. Tr. 237). The GAL stated that she reviewed a letter from a Mr. Phillips at Quick Stop Recycling advising her that he had offered appellee a job earning $45,000 and appellee would be eligible for medical and dental benefits. (Apr. Tr. 238). She also stated that she spoke with Indriolo and had no concerns about his involvement with the children. (Apr. Tr. 239-40). She found that neither party ever had a history of substance abuse. (Apr. Tr. 214). The GAL further noted that it was evident to her that the parties' extended families were very involved in the children's lives. (Apr. Tr. 241-42). The GAL spoke with the two older children's teachers who reported that the girls performed well in school and had no behavioral problems. (Apr. Tr. 242). Both teachers also opined that the girls would adapt well to a change in environment. (Apr. Tr. 242).

{¶29} Based on her investigation, the GAL recommended that the court permit appellee to relocate to Florida with the children. (Apr. Tr. 243). She felt that it was in the children's best interest to stay with appellee. (Apr. Tr. 243).

{¶30} The magistrate also interviewed the two older children in chambers. However, he found that neither one had sufficient reasoning ability to express their wishes and desires with respect to the issues at hand.

{¶31} After this hearing, the magistrate made detailed findings of fact and concluded that appellant had not demonstrated a sufficient change in circumstances based on appellee's proposed relocation. So he did not move on to address the best interest factors. The magistrate denied appellant's motion to reallocate parental rights and responsibilities. He also ruled that appellee was permitted to relocate to Jacksonville, Florida with the children.

{¶32} But the trial court sustained appellant's objections to the magistrate's decision finding that the magistrate failed to consider other reasons set out by appellant that might support a change in circumstances. Therefore, it remanded the matter to the magistrate with instructions that the parties could present additional evidence.

{¶33} The magistrate held another hearing on September 3, 2010. By this time, appellee and the children had moved to Jacksonville. The evidence at the September hearing was as follows.

{¶34} Appellant testified that appellee moved to Jacksonville with the children at the end of July without notifying him. (Sept. Tr. 9). He stated that since that time, he made two trips to Jacksonville. (Sept. Tr. 15). He stated that on August 9 he observed Indriolo spending the night at appellee's house, despite appellee's prior testimony that she would not be living with Indriolo. (Sept. Tr. 16-17). He also observed Indriolo cutting the lawn at that house. (Sept. Tr. 17). Then on August 24, appellant observed that appellee had moved from the house she was renting from Indriolo to an apartment. (Sept. Tr. 18). Appellant stated that Leah told him that they moved because they were living in Indriolo's house. (Sept. Tr. 44).

**{¶35}** Appellant then testified that he observed appellee take the two older children to school at 8:00 a.m., which was the time she was supposed to start work (Sept. Tr. 20). He further testified that the youngest child was in appellee's care and not in preschool because she was not yet old enough. (Sept. Tr. 20-21). Appellant therefore opined that it would be impossible for appellee to work from 8:00 to 4:00 due to the children's schedule. (Sept. Tr. 23).

**{¶36}** As to his contact with the children, appellant testified that the only way he can reach them is by calling appellee's cell phone. (Sept. Tr. 34-35). However, he stated that appellee does not always answer and, consequently days go by that he cannot speak to the children. (Sept. Tr. 34-35).

**{¶37}** Appellant further testified that he does not believe the children are happy in Florida. (Sept. Tr. 35). He stated that Gianna has told him she wanted to come back to Ohio. (Sept. Tr. 36). And he stated that Leah told him that she hated living in Florida and wanted to move home to Ohio. (Sept. Tr. 37).

**{¶38}** Appellee testified that she had not yet started her job at Quick Stop Recycling but that she still had the job. (Sept. Tr. 75). She stated that her boss did not want her to start until this litigation was over in case she could not stay in Florida. (Sept. Tr. 87).

**{¶39}** As to the children's schedule, appellee testified that she can drop them off at school any time after 7:35 a.m. (Sept. Tr. 82). She can then be at work at Quick Stop by 8:15 a.m. (Sept. Tr. 83). Appellee further stated that her boss told her he would be flexible with her schedule. (Sept. Tr. 97). She anticipated, however, that the children would either go to aftercare at school or she would have the nanny, who was watching the youngest child, pick them up from school and stay with them until she returned home from work. (Sept. Tr. 97).

**{¶40}** As to the phone calls, appellee stated that appellant calls the children every day and that she does not deliberately deny him access to them. (Sept. Tr. 95). She testified that the children always tell appellant that they love him and miss him. (Sept. Tr. 95). She stated that sometimes they get upset talking to him because appellant tells them that he wants them back. (Sept. Tr. 95-96).

**{¶41}** The GAL also filed another report and testified once again. The GAL stated that she had spoken to Leah's and Gianna's teachers and guidance counselor who all indicated that the children had a rough start to the school year but were doing better and socializing more. (Sept. Tr. 107). However, she stated that Leah told her she would like to move back to Ohio and Gianna told her she was not sure whether she wanted to stay in Florida or come back to Ohio. (Sept. Tr. 114). Nonetheless, the GAL reported that the children were happy when they spoke with her. (Sept. Tr. 119). She also reviewed appellee's lease for her apartment, which indicated that appellee and the children were the only people residing there. (Sept. Tr. 107-108). And the GAL spoke to appellee's new boss who informed her that appellee had not yet started due to the pending litigation but that her position was still available. (Sept. Tr. 108). He also told the GAL that Quick Stop was family-friendly and that appellee's schedule would be flexible if she needed to pick up the children. (Sept. Tr. 108). Based on her investigation, the GAL recommended that the children remain with appellee in Florida. (Sept. Tr. 110).

**{¶42}** After considering the new evidence along with the evidence from the first hearing, the magistrate once again determined that a change in circumstances had not occurred. This time, however, he addressed appellant's other alleged changes that included appellee's reduction in his visitation and communication after the divorce, drugs found in appellee's home, appellee's use of anti-anxiety medication, the children calling him crying, the children not wanting to move to Florida, and the move to Florida was only so appellee could be with her boyfriend. The trial court adopted the magistrate's decision and entered judgment accordingly.

**{¶43}** The trial court erred in finding that there was not a change in circumstances here. "A mere desire or intent to relocate does not constitute the requisite change in circumstances. Rather, there must be an actual relocation, *Masters v. Masters* (1994), 69 Ohio St.3d 83, 630 N.E.2d 665; *Campana v. Campana*, 7th Dist. No. 08 MA 88, 2009-Ohio-796, or in at least one case, substantial steps taken in furtherance of an imminent relocation. *DeVall v. Schooley*,

5th Dist. No. CT2006-0062, 2007-Ohio-2582." *In re Dissolution of Marriage of Kelly*, 7th Dist. No. 09-CA-863, 2011-Ohio-2642, ¶31.

**{¶44}** In this case, we are not faced with appellee's desire or intent to relocate. With the court's permission, appellee actually relocated to Florida with the children. Appellee and the children now live in Jacksonville. The two older children are attending school at St. Paul's in Jacksonville. And although as of the date of the final hearing she had not yet started, appellee has secured a job at Quick Stop Recycling also in Jacksonville.

**{¶45}** There is case law that states a relocation to another state and resettling with a new stepparent, standing alone, do not constitute a sufficient change in circumstances. See *In re D.M.*, 8th Dist. No. 87723, 2006-Ohio-6191; *Vincenzo v. Vincenzo*, 2 Ohio App.3d 307, 441 N.E.2d 307 (11th Dist. 1982). But as stated above, this court has found to the contrary stating that an actual relocation does constitute a change in circumstances. *Kelly*, supra. Thus, appellee's relocation from Ohio to Florida with the children constituted a sufficient change in circumstances to warrant the court to move forward with its analysis.

**{¶46}** Even though the court did not find a sufficient change in circumstances, however, it nonetheless moved beyond the change in circumstances prong of the test. The magistrate stated:

**{¶47}** "Even if the Court concluded with the facts as presented that a sufficient change in circumstances was found in this matter, the Court concludes that it is not convinced that pursuant to R.C. [3]109.04(E)(1)(a)(iii) that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

**{¶48}** The court approved the magistrate's conclusion. In support, the court went on to point out that appellee has been the children's primary caretaker; appellant could not state with certainty that he would be available at the times the children were going to and coming home from school; and appellant stated he would send the children to Springfield Schools, but he does not have a residence in the school district. Finally, the court opined that the children would sustain more

emotional trauma if appellant was designated the residential parent and appellee was designated the non-residential parent.

**{¶49}** As noted above, in order for a court to change the residential parent, the court must find that a change in circumstances has occurred, that the change in custody is in the child's best interests, *and* that the benefits of the change in custody outweigh the harm caused by the change. *Vella*, 2011-Ohio-1182, ¶23. Here, the court found that the advantages of a change in custody did not outweigh the harm likely to be caused by the change. And it gave several valid reasons in support of this finding. Thus, although the court erred in finding that there was not a significant change in circumstances, it nonetheless acted within its discretion in denying appellant's motion for reallocation of parental rights since it found that the benefits of a change in custody would not outweigh the harm likely to be caused by the change. We cannot find that the trial court acted arbitrarily, unconscionably, or unreasonably in reaching this decision.

**{¶50}** Accordingly, appellant's sole assignment of error is without merit.

**{¶51}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

DeGenaro, J. concurs.