[Cite as *Thompson v. Thompson*, 2013-Ohio-2587.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ROBERT THOMPSON | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JANEL THOMPSON NKA HUGHES | : | Case No. 2012CA00176 |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 08 DR 848

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      June 17, 2013

APPEARANCES:

For Plaintiff-Appellee:              For Defendant-Appellant:

LORI E. FUCHS                        JEFFREY JAKMIDES
P.O. Box 35787                       325 East Main Street
Canton, OH 44735                     Alliance, OH 44601

*Delaney, J.*

{¶1}   Defendant-Appellant Janel Hughes, f.k.a. Janel Thompson ("Mother"), appeals from the September 18, 2012 decision of the Stark County Court of Common Pleas, Domestic Relations Division, approving the Motion to Modify the Shared Parenting Plan of Plaintiff-Appellee Robert Thompson ("Father").

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother and Father were married March 14, 2001, and three children were born of the marriage: Robert III, born July 22, 2002; Samuel, born October 3, 2003; and Angel, born April 26, 2006.   The parties' marriage was terminated by a Judgment Entry of Divorce filed March 31, 2009 in the Stark County Court of Common Pleas, Domestic Relations Division.   The entry approved a Shared Parenting Plan and Mother was designated residential parent of the three children.   Father was granted companionship and ordered to pay child support.

{¶3}   On July 29, 2010, Father filed a Motion to Modify Visits.   Mother responded with a Motion to Dismiss and Motion for Sanctions.   Both parties' motions were overruled.

{¶4}   On April 24, 2012, Mother filed a Notice of Intent to Relocate to Columbus, Ohio.   Father was not served with the Notice, but was aware of the relocation.   On June 4, 2012, Father filed a Motion to Modify Shared Parenting Plan, requesting designation as residential parent for school purposes and termination of child support.

{¶5}   On June 14, 2012, Father filed a Motion for Ex-Parte Order seeking designation as temporary custodian of the children and prohibiting Mother from having

any contact with them. The order was granted on June 14 and a guardian ad litem was appointed on July 9, 2012. Mother filed a Motion to Rescind Ex Parte Order on July 12, 2012 and a Motion to Show Cause. On August 9, 2012, the trial court vacated the no-contact order and set all pending motions for trial on August 13, 2012.

*Evidence Produced at Trial*

{¶6}  The following relevant facts are adduced from the testimony of Father, Mother, and the guardian ad litem at trial.

{¶7}  Through March, 2012, the parties cooperated in the custodial arrangement. Both parties lived in Canton and although Mother was residential parent, they lived near each other and Father would pick up the kids after school and keep them until Mother was done with her workday.

{¶8}  In late February, 2012, Father lost his employment with Marathon Petroleum. As of the date of trial, he was still attempting to get him job back through arbitration. In the meantime, he was self-employed as a musician.

{¶9}  In April, 2012, Mother became aware of a job opportunity in Columbus, which is also where her family is located. The parties agreed the children would stay with Father to finish the school year.

{¶10} Father testified that he was motivated to file an Ex Parte Motion and Order when his children told him they were being watched by "Mr. Mark" and maternal grandmother when Mother is at work. Father was concerned because he doesn't know "Mr. Mark" and grandmother is off-limits for the children because Mother was sexually assaulted by grandmother's boyfriend, who still lives with her. The no-contact order was granted and Father became temporary custodian of the children.

{¶11} Father works Sunday through Thursday as a musician in local Stark County-area bars and restaurants and occasionally on the weekends. His hours are usually from around 8:00 p.m. until as late as 1:00 a.m., and a babysitter watches the children while he is working. The babysitter told the guardian ad litem that Father is away too much.

{¶12} When she lived in Canton, Mother was employed at Koyo Bearings making around $40,000 per year with bonuses. She found another job in Columbus making $45,000 per year, with the possibility of higher bonuses. Mother has lived in five different residences in 18 months, all rentals. She had lived with her boyfriend, Eric Lacey, who helped her with child care, in Canton, but upon moving to Columbus moved in with Mark Bell whom she described as a "family friend." Maternal grandmother lives in the Columbus area with her boyfriend, who reportedly sexually assaulted Mother and her sister although no criminal charges were filed. Paternal grandfather served a prison term for drug possession. Mother enrolled the children in a new school in Columbus.

{¶13} The guardian ad litem testified that he spoke to the children briefly, to the parties, to Father's designated babysitter, to maternal grandmother, and to Mark Bell. The guardian ad litem recommended returning the children to Mother's custody with Father having court-ordered visitation.

{¶14} On September 18, 2012, the trial court issued a Judgment Entry approving Father's Motion to Modify the Shared Parenting Plan, designating him residential parent for school purposes and granting Mother parenting time in accordance with the Stark County Family Court Parenting Time Schedule.

{¶15} Mother appeals from the trial court's decision of September 18, 2012.

**ASSIGNMENT OF ERROR**

{¶16} Appellant raises one Assignment of Error:

{¶17} "I. THE TRIAL COURT'S DECISION TO DESIGNATE PLAINTIFF-APPELLEE ROBERT THOMPSON RESIDENTIAL PARENT OF THE PARTIES' THREE MINOR CHILDREN WAS UNREASONABLE, ARBITRARY, AND UNCONSCIONABLE, ESPECIALLY GIVEN MR. THOMPSON'S FILING OF AN EX-PARTE MOTION TO A JUDGE NOT ASSIGNED TO THE CASE AND BASED ON AN AFFIDAVIT RIDDLED WITH FALSEHOODS, PREVENTING MS. HUGHES FROM SEEING HER CHILDREN FOR SEVEN WEEKS."

**ANALYSIS**

{¶18} Mother argues the trial court abused its discretion when it modified the Shared Parenting Decree and Plan because it is in the children's best interest to move to Columbus with her.

*Standard of Review: Modification of Shared Parenting Plan*

{¶19} A trial court enjoys broad discretion in custody proceedings. *Cossin v. Holley*, 5th Dist. No.2006 CA 0014, 2007–Ohio–5258, ¶ 28 citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), paragraph one of the syllabus. An appellate court reviews the merits of a trial court's modification of the terms of the Shared Parenting Plan through R.C. 3109.04(E)(2)(b) under an abuse of discretion standard. *Picciano v. Lowers*, 4th Dist. No. 08CA38, 2009–Ohio–3780, ¶ 25. In order to find an abuse of discretion, we must determine the trial court's decision was

unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶20} R.C. 3109.04(E) governs modification of a Shared Parenting Decree and/or a Shared Parenting Plan. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, ¶ 11. R.C. 3109.04(E)(1)(a) requires a court to find a change in circumstances of the child, residential parent, or either parent subject to a Shared Parenting Decree before modifying a decree allocating parental rights and responsibilities. Pursuant to the statute, three elements must be met to change the residential parent status: 1) there must be an initial showing of a change in circumstances; 2) if circumstances have changed, the modification of custody must be in the children's best interest; and 3) any harm to the children from a modification must be outweighed by the benefits of such modification. See *In re Kelly*, 7th Dist. No. 09 CA 863, 2011-Ohio-2642.

{¶21} The trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

{¶22} R.C. 3109.04(E)(1)(a), provides, in pertinent part,

> The court shall not modify a prior decree allocating parental rights
> and responsibilities for the care of children unless it finds, based

on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [ or] his residential parent, * * * and that the modification is necessary to serve the best interest of the child.

*Change of Circumstances*

{¶23} R.C. 3109.04(E)(1)(a) requires the trial court find a change of circumstances before it can modify the allocation of parental rights and responsibilities. "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Lewis v. Lewis*, 12th Dist. No. CA2001–09–209, 2002 WL 517991 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Flickinger*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 955 N.E.2d 453, 2011–Ohio–2610, ¶ 17 (3rd Dist.), citing R.C. 3109.04(E)(1)(a).

{¶24} Moreover, and as stated by the Ohio Supreme Court, "a trial judge must have wide latitude in considering all the evidence" when making a determination of change of circumstances. *Flickinger*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. If a court could not consider events as they continued to unfold once a custody motion is filed, the trial court would be perpetually re-addressing new filings alleging a change in circumstances due to the inevitable passage of time between the filing of the original custody motion and the date of the hearing on the motion. This barrier is meant to operate as the "domestic relations version of the doctrine of res judicata," and is meant to prevent the "constant relitigation of the same issues" adjudicated in prior custody orders. *Perz v. Perz*, 85 Ohio App.3d 374, 376, 619 N.E.2d 1094(1993).

{¶25} We have previously held that relocation alone is not sufficient to constitute a change in circumstances, but may be a factor in such determination. *Stein v. Anderson*, 5th Dist. No. 2009 AP 08 0042, 2010-Ohio-18, ¶ 13.

{¶26} In the instant case, the trial court found the relocation of the children from Canton to Columbus to constitute a change in circumstances because it will make it difficult for Father to play a role in their daily lives, which he has been doing since either August or October, 2011 when he took an active role in picking them up from school, while the children resided with him during Mother's initial weeks in Columbus, and throughout their sports activities. The trial court also found the instability of Mother's lifestyle to be a factor in change of circumstances.

{¶27} Based upon our review of the record, we find the trial court's decision regarding change of circumstances does not constitute an abuse of discretion.

*Best Interest of the Children*

{¶28} If a change of circumstances is established, the trial court must weigh the best interest of the children before modifying a residential-parent designation. R.C. 3109.04(F) sets forth the factors a trial court must consider in determining the best interest of the child:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent

pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶29} The trial court examined each statutory factor in turn and the evidence presented by the parties. We note here the factors that weighed most heavily in the best-interest determination.

{¶30} Each parent wants the children to reside with him or her. Father lost his job making $120,000 per year, and Mother indicated her reason for moving to Columbus is to find a better job than her job at Koyo Bearings making $40,000 per year. The job she found in Columbus will earn a projected annual income of $45,002.00 per year, and as the trial court pointed out, there is no evidence she looked for a job in the Canton area first.

{¶31} The trial court interviewed the children in camera pursuant to R.C. 3109.04(B)(1). We have reviewed the record of the interview, which shall remain

confidential. *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878 (12th Dist.2002), ¶ 23. The interview was significant to the trial court and is significant to our determination that the trial court did not abuse its discretion.

{¶32} Both parents have significant interaction with the children which has ebbed and flowed over time due to the parents' work schedules.

{¶33} An issue did arise, however, which potentially implicated the children's safety and which was given great significance by the trial court. When Father sought the Ex-Parte Order resulting in the no-contact order, he alleged Mother was leaving the children with her boyfriend whom they hardly knew and with her step-grandfather, who sexually assaulted Mother and her sister when they were younger.

{¶34} These allegations were explored at trial. Mother explained that upon initially relocating to Columbus, she needed a place to live and stayed with Mark Bell, whom she referred to as a "family friend." The children were around Bell during Mother's weekends for the 60 days she lived with Bell.

{¶35} It is unclear from the testimony at trial whether maternal grandmother is married to the person who sexually assaulted Mother, but he is referred to as "step grandfather" to make the relationship clear. It is evident from the testimony the step grandfather still lives with maternal grandmother, although Mother denies that she ever allowed the children to be at maternal grandmother's home alone. Father insists otherwise based upon what the children have told him. Either way, the trial court found it "troubling that the maternal grandmother would stay with a man who sexually assaulted two of her own children" and therefore "question[ed] the trustworthiness and credibility of the maternal grandmother."

{¶36} Both parents have some issues with lifestyle instability. Father is presently self-employed as a musician and there was conflicting testimony about how often he is away from the children at night. Mother has moved five times in 18 months and has now leased an apartment in Columbus.

{¶37} The children attended Clarendon elementary school for several years, which is close to Father's residence. When Mother broke up with her boyfriend, she rented another home in Canton that required the children to be moved to Fairmont. Mother's Columbus apartment is five minutes away from the school she has selected for the children there.

{¶38} Mother raised the issue at trial and on appeal that Father deprived her of the children for seven weeks as a result of obtaining the ex parte no-contact order. The trial court found Father's concerns for the children's safety to be reasonable, and we agree with this determination.

{¶39} The trial court found the best interest of the children warrants that the parties' shared parenting plan should be modified, and based upon our review of the record, we find the trial court did not abuse its discretion in making this determination.

*Benefit of Modification Outweighs Harm*

{¶40} Finally, the trial court found the harm likely to be caused to the children by the modification is outweighed by it advantages, and we agree. The trial court did not abuse its discretion in determining that overall, residing with Father in Canton, where the children have strong school and athletic ties, along with "the safety and stability that their [F]ather offers" is paramount in this case.

{¶41} Upon review, we find no abuse of discretion in the trial court's determination there was a change in circumstances and it was in the best interests of the children to change the designation of the residential parent to Father. Mother's sole assignment of error is overruled.

## CONCLUSION

{¶42} For the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Delaney, J.

Gwin, P.J. and

Baldwin, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. CRAIG R. BALDWIN

PAD:kgb/pm5113

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| ROBERT THOMPSON | : | |
| Plaintiff - Appellee | : | JUDGMENT ENTRY |
| -vs- | : | |
| JANEL THOMPSON NKA HUGHES | : | Case No.  2012CA00176 |
| Defendant - Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. CRAIG R. BALDWIN