[Cite as *Vella v. Vella*, 2011-Ohio-1182.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JOHN VELLA | ) | CASE NO. 10 JE 7 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MICHELLE L. VELLA | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common Pleas of Jefferson County, Ohio Case No. 08 DR 56

JUDGMENT:        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Adrian V. Hershey
4110 Sunset Boulevard
Steubenville, Ohio 43952

For Defendant-Appellant:        Atty. Samuel A. Pate
Suite 700 Sinclair Building
Steubenville, Ohio 43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 9, 2011

WAITE, P.J.

{1} Appellant, Michelle L. Vella, appeals the judgment of the Jefferson County Court of Common Pleas, granting the motion of Appellee, John Vella, to reallocate parental rights and responsibilities to him over Michael Vella, d.o.b. 2/20/98, and Nicholas Vella, d.o.b. 3/22/01, and denying Appellant's motion to reallocate parental rights to her over Dominic Vella, d.o.b. 6/13/1994.

{2} When the parties divorced on June 2, 2008, they entered into a shared parenting plan. On July 28, 2008, Appellee filed a motion for reallocation of parental rights and responsibilities over all three of the boys. By agreement of the parties, on October 7, 2008, Appellee was designated the residential parent of Dominic, and Appellant was designated the residential parent of Michael and Nicholas.

{3} On June 3, 2009, Appellee filed a second motion for reallocation of parental rights and responsibilities regarding Michael and Nicholas. On June 15, 2009, Appellant filed her motion for reallocation of parental rights and responsibilities as to Dominic. An evidentiary hearing was conducted by the magistrate on July 30, 2009.

{4} On August 19, 2009, the magistrate filed her decision granting Appellee's motion to be designated the residential parent of Michael and Nicholas, and denying Appellant's motion to be designated Dominic's residential parent. On August 25, 2009, the magistrate entered a nunc pro tunc decision correcting errors in the decision unrelated to the matters on appeal.

{5} On August 26, 2009, Appellant filed her written objections to the decision, and on September 25, 2009, she filed a brief in support of the written

objections. On January 15, 2010, the trial court overruled Appellant's objections, and on February 9, 2010, the trial court issued the judgment entry approving the magistrate's decision. In this appeal, Appellant challenges the trial court's determinations that a change in circumstances occurred with respect to Michael and Nicholas, and that no change of circumstances occurred with respect to Dominic. She further argues that the reallocation of parental rights with respect to Michael and Nicholas were not in the best interests of the children, and that the harm outweighed the benefit of the change of environment.

{6} The testimony at the hearing established that Appellant leased a residence with her then boyfriend, Joe Corsi, at some point after the parties had entered into the shared parenting plan. Appellee testified that Corsi used foul language in front of the boys, and that he overheard Corsi cursing him while he was on the phone with his sons. (Tr., pp. 7-8.) During that same conversation, Corsi told one of the boys to hang up on Appellee. (Tr., p. 8.) Appellee also overheard Corsi threaten to "punch [Appellant] between the eyes." (Tr., p. 9.) According to Appellee, he stopped calling Appellant's home in October of 2008 in order to prevent Corsi's outbursts. (Tr., pp. 8, 10.)

{7} Appellee testified that the boys were upset by Corsi's behavior and, more specifically, that Corsi had alienated Dominic from his mother. After Dominic stole a hockey jersey from her home, Appellant threatened to call the police to report the theft. (Tr., p. 10.) Although Appellee made Dominic return the jersey, and the police were never called, Dominic refused to spend any time at his mother's following

the incident. Appellee testified that he believed Corsi was behind the threats. (Tr., p. 23.)

{8} Appellee testified that Appellant left Corsi at some point prior to the hearing and moved in with her parents, but he believed that she did so because the motion to reallocate parental rights and responsibilities was pending. Appellant testified that she had planned to leave Corsi in March, but her parents could not facilitate her move until the end of June due to the failing health of her paternal grandfather. (Tr., p. 57.) Appellee testified that Appellant still talks to Corsi on the phone, and that he could not rule out the possibility that she would reunite with Corsi after the motions pending before the trial court had been resolved. (Tr., p. 16.)

{9} Appellee testified that his work schedule at the mill alternates every other week: he works 6 a.m. to 2 p.m. the first week, and 2 p.m. to 10 p.m. the second week. However, his mother's residence is next door and he stated that she would take care of the boys in his absence. (Tr., p. 20.) Appellee was laid off from the mill at the time of the hearing, but was expecting to get called back before the end of the year.

{10} Appellee stated that Dominic has always performed poorly at school. (Tr., p. 19.) Appellant allowed Dominic to transfer to a new school for the coming school year in hopes that the move would motivate Dominic to work harder on academics. Dominic had a "D" average the year that he lived with Appellee. (Tr., p. 24.) Appellee conceded that he had at least twice allowed Dominic to taste beer. (Tr., p. 18.)

**{11}** At the close of Appellee's direct testimony, Appellant's counsel moved for a directed verdict predicated on Appellee's failure to demonstrate that a change in circumstances had occurred with respect to Michael and Nicholas. Appellee's counsel expressed Appellee's frustration over the fact that he could not recount the many stories he was told by his sons about Corsi's behavior, and asked the trial court to interview the boys before ruling on the motion. (Tr., pp. 21-22.) The magistrate denied the motion for directed verdict "because of [Appellant's] relationship with Mr. Corsi and how that posed an abusive environment for the children." (Tr., p. 22.)

**{12}** On cross examination, Appellee defended his decision not to force Dominic to spend time at Appellant's house because he wanted to spare Dominic "[t]he grief from Mr. Corsi" that included "vulgar language, looks," and "things [his] son would tell [Appellee] when he got home." (Tr., p. 23.) With respect to Dominic's grades, Appellee conceded that Michael and Nicholas received "A's and B's" in school but he argued that it had little to do with the fact that they were living with Appellant. (Tr., p. 27.) Later in the hearing, Appellant admitted that Michael and Nicholas were "naturals" when it came to academics. (Tr., p. 55.)

**{13}** With respect to extra curricular activities, Appellee defended his decision to take Michael out of a baseball game to attend a fish fry because Appellee's work schedule limited their time together. (Tr., p. 37.) Appellant testified that Michael missed six basketball games during his visitation with Appellee. (Tr., p. 67.) Appellee also permitted Dominic to skip his eighth grade graduation ceremony, unbeknownst to Appellant and her parents, who attended the ceremony.

**{14}** Appellant testified that she is currently living with her parents, and that her relationship with Corsi is over. She further testified that she entered a two year physical therapy program at Kent State University, and would probably continue to live with her parents until she could finish school and get a job. When asked if she anticipated living with Corsi again, she responded, "[a]bsolutely not." (Tr., p. 68.)

**{15}** She flatly denied Appellee's assertion that Corsi threatened to hit her. (Tr., p. 69.) She refused to admit that Cori was abusive, testifying instead that she and Corsi "had [their] occasional fight like every couple that's in a relationship." (Tr., p. 68.) However, she conceded that the arguments and the children "not being happy" about the arguments contributed to the breakup. (Tr., pp. 69-70.)

**{16}** She testified that the boys never told her that they were upset by her arguments with Corsi, but that Appellee told her they were upset. (Tr., p. 70.) She further testified that Corsi offered to leave when Dominic came to visit her. (Tr., p. 64.)

**{17}** Appellant criticized Appellee's failure to encourage Dominic to play sports because of her belief that sports teach children responsibility. (Tr., pp. 54, 61.) She testified that playing sports motivated Dominic to get better grades, because he had to maintain a "C" average to remain on the various sports teams. (Tr., p. 53.) She admitted that Dominic spends more time with her now that she is living with her parents. (Tr., p. 66.)

**{18}** She expressed concern that the boys want to live with Appellant because he buys them material things. (Tr., pp. 61-62.) She also challenged

Appellee's contention that he only allowed Dominic to taste beer. She claims that he permitted Dominic to drink "a whole beer" on two or three different occasions. (Tr., p. 56.)

{19} Appellant's parents both testified that they enjoy having Michael and Nicholas living with them, and that they have space for Dominic as well. (Tr., pp. 71, 75-76.) Appellant's father is retired and explained that he would be available to care for the boys while Appellant is attending Kent State. (Tr., pp. 68, 75.) Appellee conceded that Appellant's parents are "good grandparents." (Tr., p. 11.)

<u>ASSIGNMENT OF ERROR NO. 1</u>

{20} "The trial court committed reversible error when it failed to vacate the Magistrate's Decision granting Appellee's Motion for the Reallocation of Parental Rights and Responsibilities when the same was not supported by the evidence, was contrary to law and abuse [sic] of discretion."

{21} Custody orders are reviewed for abuse of the trial court's discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 416, 674 N.E.2d 1159; *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. An abuse of discretion refers to an order that is unreasonable, unconscionable or arbitrary. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{22} The Supreme Court of Ohio has recognized that domestic relations courts have broad discretion in matters related to the allocation of parental rights and responsibilities and has cautioned that appellate courts must accord "the utmost respect" to this discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d

846. In *Miller*, the Supreme Court of Ohio noted that "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id., citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. Consequently, "the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Id., citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

**{23}** In order for a court to reallocate parental rights and responsibilities and change the residential parent, a court is required to find that a change in circumstances has occurred since the prior custody order; that the change in custody is in the best interests of the child; and that the benefits of the change in custody outweigh the harm caused by the change. These requirements are found in R.C. 3109.04(E)(1), which states:

**{24}** "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

**{25}** "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

**{26}** "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

**{27}** "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

**{28}** "The clear intent of [R.C. 3109.04(E)(1)(a)] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of children, even though the parent out of custody may be able to prove that he or she can provide a better environment." *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 445 N.E.2d 1153.

**{29}** In determining the best interests of the child in a change of custody dispute, the court is also required to consider the factors listed in R.C. 3109.04(F) before changing custody:

**{30}** "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and

responsibilities, the court shall consider all relevant factors, including, but not limited to:

**{31}** "(a) The wishes of the child's parents regarding the child's care;

**{32}** "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

**{33}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{34}** "(d) The child's adjustment to the child's home, school, and community;

**{35}** "(e) The mental and physical health of all persons involved in the situation;

**{36}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{37}** "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

**{38}** "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of

the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

**{39}** "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{40}** "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

**{41}** The starting point in a modification of custody action is whether there was a change in circumstances since the prior final custody order that supports the court's intervention. *Davis*, supra. The Supreme Court of Ohio has explained that a change in circumstances does not have to be "substantial," but "the change must be a change of substance, not a slight or inconsequential change." Id. at 418. The

phrase, "change in circumstances," is generally "intended to denote an event occurrence, or situation which has had a material and adverse effect upon a child." *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551. In addition to an actual change in circumstances, a trial court may reallocate parental rights based on facts that were unknown to the court at the time of the prior decree. R.C. 3109.04(E)(1).

{42} The trial court did not abuse its discretion when it concluded that a change of circumstances had occurred with respect to Michael and Nicholas. In *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶18, the Ohio Supreme Court recognized that "Ohio courts have considered a variety of factors that are relevant to the change-in-circumstances requirement of R.C. 3109.04(E)(1)(a)," including a new marriage that creates hostility by the residential parent and spouse toward the nonresidential parent, frustrating attempts at visitation, *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159; the advancement of a child from infancy to adolescence, *Perz v. Perz* (1993), 85 Ohio App.3d 374, 377, 619 N.E.2d 1094; unruly behavior of the residential parent involving the police, *Butler v. Butler* (1995), 107 Ohio App.3d 633, 669 N.E.2d 291; and fights between the residential parent and a new spouse that required police intervention, along with the fact that the residential parent had moved six times in two years, *Dedic v. Dedic* (Jan. 27, 1999), 9th Dist. No. 98CA0008, 1999 WL 33445. Here, the record establishes that Appellant began cohabiting with Corsi at some point after the parties entered into the shared parenting agreement, and that Appellant's cohabitation with Corsi proved

to be a polarizing force in the family dynamic. Appellant conceded as much when she testified that Corsi offered to leave their home when Dominic was scheduled to stay with her. Therefore, the testimony at trial established that a change of circumstances occurred.

{43} Turning to the best interest analysis, the record reflects that the mental health of the children, as well as their interaction with their parents, is best served by the reallocation of parental rights in this case. Corsi's presence interfered with the children's relationship with both of their parents and Dominic. Appellee testified that he stopped calling the boys in October of 2008 for fear of upsetting Corsi, as he was concerned that the boys would suffer the consequences. He further testified that Dominic refused to go to Appellant's house due to the "grief" that he would suffer at Corsi's hands. Although Appellee was unable to communicate the details of the boys' problems with Corsi, the children were given the opportunity to do so when the magistrate interviewed them pursuant to R.C. 3109.04(B)(1).

{44} Finally, the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the children. Appellant's testimony that she does not intend to reconcile with Corsi is undercut by her refusal to admit to the deleterious effect that he had on her relationship with her children and her continuing communication with him.

{45} Therefore, the trial court did not abuse its discretion when it concluded that a change of circumstances had occurred with respect to Michael and Nicholas, that it was in the best interest of the children to reallocate parental rights in this case,

and that the harm caused by the change of environment is outweighed by the advantages of the change of environment. Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

{46} "The trial court committed reversible error when it failed to vacate the Magistrate's Decision denying Appellant's Motion for the Reallocation of Parental Rights and Responsibilities when the same was supported by substantial, credible evidence adduced at the evidentiary hearing."

{47} Appellant contends that the trial court ignored several facts adduced at the hearing when it concluded that there had been no change in circumstances with respect to Dominic. Appellant cites Dominic's "D" grade point average and the fact that Appellee permitted Dominic to drink beer as evidence ignored by the trial court. To the contrary, the magistrate considered the foregoing facts, stating, "[i]n weighing the situations of poor judgments against the estranged relationship of Defendant, Michelle Vella, and the minor child, more harm is likely to result in changing the designation of the residential parent." (Mag. Decision, p. 3.) In other words, the magistrate considered the "poor judgments" of Appellee raised by Appellant in this appeal, but did not conclude that they constituted a change in circumstances sufficient to warrant a reallocation of parental rights. Therefore, Appellant's second assignment of error is overruled.

{48} In conclusion, the trial court did not abuse its discretion when it concluded that a change of circumstances had occurred with respect to Michael and

Nicholas, but that no such change had occurred with respect to Dominic. Likewise, no abuse of discretion is apparent in the trial court's conclusion that the best interests of Michael and Nicholas are served by the reallocation of parental rights and that the harm caused by the change of environment is outweighed by the advantages of the change of environment. Accordingly, the judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.