[Cite as *Miller v. Miller*, 2018-Ohio-4018.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

TIFFANY D. MILLER,

Plaintiff-Appellant,

v.

COREY E. MILLER,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0007.**

---

Domestic Relations Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 15-DR-159.

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Rebecca Bench*, Bench Law Firm, 23 Driggs Lane, Bridgeport, Ohio 43912, for
Plaintiff-Appellant, and

*Atty. Mary Corabi*, Corabi Law Firm, 424 Market Street, Steubenville, Ohio 43952, for
Defendant-Appellee.

Dated:
September 28, 2018

**Donofrio, J.**

{¶1} Plaintiff-appellant, Tiffany Miller, appeals a Jefferson County Common Pleas Court judgment granting defendant-appellee's, Corey Miller's, motion to reallocate parental rights and responsibilities of minor children.

{¶2} On June 15, 2015, appellant filed a complaint for divorce against appellee along with a motion for temporary orders. The motion for temporary orders sought a ruling on parental rights and responsibilities of the parties' two minor children: A.M., d.o.b. 4/14/2010, and S.M., d.o.b. 7/10/2014. After a hearing, appellant was designated as the temporary custodial parent.

{¶3} After a full hearing on the divorce action, the magistrate issued a decision. Relevant to this appeal, the magistrate designated appellant as the residential parent and granted appellee extended parenting time.

{¶4} Appellee filed numerous objections to the magistrate's decision. But the trial court affirmed the magistrate's decision and issued a final decree of divorce on January 6, 2017. This decree named appellant the residential parent.

{¶5} On May 31, 2017, appellee filed a petition for a civil protection order which sought custody of the children. The basis of this petition was that appellant's live-in boyfriend was allegedly physically abusing the children. Appellee was given temporary custody of the children but the petition was dismissed on June 19, 2017.

{¶6} On June 26, 2017, appellee filed a motion for reallocation of parental rights and responsibilities. The basis of this motion was that the boyfriend physically abused the children on three separate occasions: in December of 2016, April of 2017, and May of 2017. The motion also alleged that appellant made numerous disparaging and public remarks concerning appellee and appellee's girlfriend.

{¶7} On September 13, 2017, a hearing was held on appellee's motion for reallocation of parental rights. At this hearing, appellee testified as to injuries he witnessed on S.M. In December of 2016, appellee witnessed welts on S.M. while he was bathing her. In April of 2017, S.M. told appellee that the boyfriend "slammed her." In May of 2017, S.M. had a cut and bruised eye which resulted in appellee taking S.M.

to the emergency room. Appellant did not give appellee a reason as to any of these injuries.

{¶8} Two investigators who interviewed the children also testified at this hearing. Appellee called Lisa Muselli, an interview specialist and therapist from Harmony House Children's Advocacy Center. Muselli testified that, during her forensic interview with A.M., A.M. indicated that she saw the boyfriend hit S.M. on at least one occasion. Appellant called Donna White, a supervisor with Children Protective Services in West Virginia. White testified that A.M. said S.M. lied to Muselli about being abused because appellee told her to lie.

{¶9} The guardian ad litem for the children also filed a report regarding custody. The guardian recommended that appellee be named the residential parent and appellant the non-residential parent. The guardian also recommended that the boyfriend not be in the presence of the children or be able to communicate with the children under any circumstances.

{¶10} In a decision dated November 6, 2017, the magistrate decided that appellee be named residential parent and appellant be named the non-residential parent. Appellant filed an objection to the magistrate's decision on numerous bases including: the allegations of abuse were found to be unsubstantiated by Children's Protective Services, the magistrate considered evidence of events that happened prior to the divorce decree, and the magistrate considered facts that were already considered in the original divorce hearing.

{¶11} In a judgment entry dated April 12, 2018, the trial court adopted the magistrate's decision and awarded appellee full permanent custody of the children. Appellant timely filed this appeal on April 25, 2018. Appellant now raises one assignment of error.

{¶12} Appellant's sole assignment of error states:

THE TRIAL COURT'S DECISION TO AWARD FULL AND PERMANENT CUSTODY OF THE MINOR CHILDREN TO APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONSTITUTES AN ABUSE OF DISCRETION AND IS CONTRARY TO THE MANDATES SET FORTH IN OHIO REVISED CODE § 3109.04.

**{¶13}** Appellant argues that the trial court inappropriately relied on events and circumstances that happened prior to the divorce decree, which originally allocated parental rights, when ruling on appellee's motion to reallocate parental rights. Appellant argues that if the prior events are excluded, the trial court's judgment is against the manifest weight of the evidence.

**{¶14}** R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (7th Dist. 2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

**{¶15}** R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶16} Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the court is required to find (1) that a change in circumstances has occurred since the prior custody order; (2) that the change in custody is in the child's best interests; and (3) that the benefits of the change in custody outweigh the harm caused by the change. *Vella v. Vella*, 7th Dist. No. 10-JE-7, 2011-Ohio-1182, ¶ 23.

{¶17} In granting the motion to reallocate parental rights, the trial court primarily relied on allegations of abuse. The trial court noted that the alleged acts occurred in December of 2016, April of 2017, and May of 2017.

{¶18} Appellant argues that the trial court's ruling on the alleged abuse by the girls was against the manifest weight of the evidence. Appellant argues that both White and Muselli testified that the allegations of abuse were unsubstantiated.

{¶19} Analyzing Muselli's testimony, Muselli testified that in May of 2017, A.M. saw S.M. with a black eye. (9/13/2017 Tr. 17). S.M. told A.M. that she was hurt. (9/13/17 Tr. 17). A.M. told appellant about S.M.'s black eye and appellant responded "[d]on't worry about it." (9/13/17 Tr. 17-18). Muselli testified about the December 2016 incident. In that incident, A.M. saw the boyfriend hit S.M. and the hit left a handprint on S.M.'s back. (9/13/17 Tr. 18). A.M. told appellant about this hit and appellant "started to text." (9/13/17 Tr. 18). Muselli testified that A.M. had witnessed appellant and the boyfriend physically fight with each other. (9/13/17 Tr. 18). Muselli testified that, based on several reliability factors, she "did not have a reason to not believe" A.M. (9/13/17 Tr. 21). Muselli also interviewed S.M. but determined that her interview was inconclusive because she had just turned three years old and was not consistent during the interview. (9/13/17 Tr. 20).

{¶20} Analyzing White's testimony, White testified that she reviewed the video from Muselli's interview and then contacted appellant to set up her own interview of the children. (9/13/17 Tr. 35-37). White then interviewed the children in appellant's home. (9/13/17 Tr. 37). White Interviewed A.M. first and concluded that her interview with A.M. was not consistent with Muselli's interview with A.M. (9/13/17 Tr. 38-39). White testified that A.M. said she liked living with appellant and her boyfriend. (9/13/17 Tr. 39). White testified that A.M. said "I lied when I talked to that other lady." (9/13/17 Tr. 39). When

White asked A.M. why she lied, A.M. said "[m]y dad told me to lie." (9/13/17 Tr. 40). White asked A.M. to clarify what exactly she lied about to which A.M. responded she lied about her boyfriend hitting S.M. (9/13/17 Tr. 40).

{¶21} During White's interview with S.M., White testified that S.M. did not make "any disclosures." (9/13/17 Tr. 43). But White testified that S.M. said "Mom threw a toy puppy and hit me in the eye." (9/13/17 Tr. 43). White's understanding of S.M.'s interview was that appellant was "cleaning up the toys in the room, threw the toy in the toy box and it bounced up and hit [S.M.] in the eye." (9/13/17 Tr. 44). White also met with the boyfriend and did not have any concerns after talking with him. (9/13/17 Tr. 47).

{¶22} On cross-examination, White testified that another worker, Doug Platt, started the abuse investigation into A.M. and S.M. (9/13/17 Tr. 50). White's investigation also took longer than Children Protective Services' approved timeframe of 45 days. (Tr. 9/13/17 Tr. 52-54). White also testified that it was "not typical" to interview children in an abuse investigation in the home where the alleged abuse occurred. (9/13/17 Tr. 58).

{¶23} Appellee also testified at this hearing. Appellee testified that, in December of 2016, S.M. had welts on her back. (9/13/17 Tr. 139). When asked how she got the welts, S.M. responded that the boyfriend had hit her and hurt her. (9/13/17 Tr. 140). In April 2017, appellee noticed that S.M. had bruises on her lower spine. (9/13/17 Tr. 142). When asked how she got those bruises, S.M. responded that the boyfriend slammed her. (9/13/17 Tr. 142). In May 2017, appellee went to pick up the children when he noticed that S.M. had a black eye and a cut on the same eye. (9/13/17 Tr. 144). Appellee immediately took S.M. to the emergency room (9/13/17 Tr. 145). When appellee asked appellant how S.M. got a black eye, appellant did not comment on the injury and responded "You cannot withhold the girls again and keep alleging abuse." (9/13/17 Tr. 146).

{¶24} The GAL also testified regarding this motion. The GAL testified that A.M. saw the boyfriend hit S.M. and saw redness on S.M.'s backside. (11/3/17 Tr. 11). The GAL recommended that the children remain in appellee's custody. (11/3/17 Tr. 18).

{¶25} The original divorce decree was issued on January 6, 2017. The first allegation of abuse occurred in December of 2016. While this allegation occurred prior to the divorce decree, it was still appropriate for the trial court to consider when ruling on

the motion for reallocation because it was unknown by the trial court. Prior to the divorce decree, there is no mention of this allegation in any transcript nor does any filing by either party mention this allegation. Therefore, because it was unknown to the trial court prior to issuing the divorce decree, it was appropriate for the trial court to consider pursuant to R.C. 3109.04(E)(1)(a).

**{¶26}** Additionally, the other two allegations of abuse, April of 2017 and May of 2017, happened at least three months after the divorce decree was issued. These allegations were also appropriate for the trial court to consider.

**{¶27}** The trial court's ruling on the abuse allegations was based on competent and credible evidence. There was sufficient evidence in the record to support a ruling that the children experienced a change in circumstances, that the change in custody was in the best interests of the children, and that the benefits of the change in custody outweigh the harm caused by the change. Appellant essentially argues that White's testimony should have greater weight than Muselli's testimony. But, as White testified, there were numerous procedural errors with White's investigation into the allegations of abuse. It is essentially an issue of witness credibility which the trier of fact is in the best position to determine. *PNL Industries Co. v. Am. Painting Co., Inc.*, 7th Dist. No. 12-MA-17, 2013-Ohio-1432, ¶ 34.

**{¶28}** Appellant also contends that numerous other facts relied on in the magistrate's decision and the trial court's ruling violate R.C. 3109.04(E)(1)(a) because they occurred prior to the divorce decree and were already known by the trial court during the divorce proceedings. The specific events appellant takes issue with are:

1) Appellant's relocation to West Virginia without giving notice to appellee;
2) Appellant having a master's degree in education but, at the time of the motion to reallocate parental rights and responsibilities hearing, not taking any licensing test to become a teacher;
3) An incident in October of 2016 where appellant did not timely pick up glasses for [A.M.] after a doctor determined that [A.M.] needed glasses and appellee ended up retrieving the glasses;

4) An issue with dental care where appellee alleged appellant neglected the children's teeth due to one of the children needing to have two teeth extracted; and

5) Testimony from appellee that appellant was interfering with appellee's visitation with the children.

Brief of appellant 8-11.

**{¶29}** Regarding appellant's move to West Virginia, the trial court's judgment entry notes that appellant moved her residence several times, including out of state, without notifying appellee. At the original divorce hearing appellant testified that she had moved from Ohio to West Virginia during the original divorce proceedings. (11/10/15 Tr. 18). At the motion to reallocate hearing, appellant testified that she lived with her grandmother prior to moving in with the boyfriend in the summer of 2016. (9/13/17 Tr. 93).

**{¶30}** But appellant also testified about a hearing before the trial court on August 22, 2016. At this hearing, it was noted that the trial court found that appellant was "living in a cabin in the woods at her boyfriend's house". (9/13/17 Tr. 63-64). Appellee's counsel noted that the August 22, 2016 hearing was the first time appellee was aware that appellant had moved into boyfriend's home. (9/13/17 Tr. 64).

**{¶31}** It was not proper for the trial court to consider appellant's move into boyfriend's home. Testimony at the motion to reallocate hearing indicates that the trial court was previously aware of appellant's move into this home without notifying appellee. But this error on the trial court's part is harmless. Reviewing courts are required to disregard any error or defect in the pleadings or proceedings that do not affect the substantial rights of the adverse party. R.C. 2309.59. The allegations of abuse are sufficient to justify the trial court granting appellee's motion to reallocate parental rights and responsibilities.

**{¶32}** Regarding appellant not taking a licensure test to become a teacher, the divorce decree contains the following passage:

Both parties have a Master['].s Degree in education. * * * [Appellant] however has not passed her licensure tests. When questioned by the

Court she advised that she did not have the money to take the tests. It is strongly recommended that [appellant] complete her licensure so that she can get a job consistent with her education level.

**{¶33}** This passage indicates that the trial court was aware during the initial divorce proceedings that appellant had not completed her teaching licensure procedure. At the motion to reallocate hearing, appellee testified that she took two of her needed tests but she had to redo one other. (9/13/17 Tr. 65). The last time she took the test was in June of 2016. (9/13/17 Tr. 65). The test she needed to redo was one that she took and passed approximately six years prior but she still had to redo the test. (9/13/17 Tr. 65-66). But appellee managed to obtain a "teaching position" in the spring of 2017 where she worked Monday through Friday. (9/13/17 Tr. 66).

**{¶34}** The trial court's reliance on appellee's teacher licensing tests in its April 12, 2018 judgment entry was also error pursuant to R.C. 3109.04(E)(1)(a). Appellant had since become employed as a teacher. Moreover, appellant had passed two necessary licensure exams. This does not qualify as a change in circumstances. But for reasons previously stated, this is also a harmless error to be disregarded pursuant to R.C. 2309.59.

**{¶35}** Regarding appellee's failure to pick up A.M.'s glasses, the trial court's April 12, 2018 judgment entry found that appellant did not pick up the glasses for two months. It also noted that appellee picked up the glasses and paid the balance for the glasses even though he had insurance and was current in his child support. But the judgment entry notes that this incident occurred around October of 2016.

**{¶36}** This event was unknown to the trial court prior to the divorce decree. There is no transcript in the record, prior to the divorce decree being issued, that makes a reference to this event. There are also no court filings that make reference to this event. And the divorce decree itself makes no reference to this event. Because this event was unknown to the trial court, it was appropriate for the trial court to consider pursuant to R.C. 3109.04(E)(1)(a).

**{¶37}** Regarding appellant's inability to provide adequate dental care to the children, the trial court's April 12 2018 judgment entry found that appellant "had neglected the children's dental care."

**{¶38}** At the motion to reallocate hearing, appellant testified about an event where A.M. had to see a pediatric dentist in order to have two teeth extracted. (9/13/17 Tr. 77). There is no specific reference as to when this event took place but appellant did testify that there was some discussion with the pediatric dentist about how much the insurance company would cover for the procedure that took place in "February of this year * * *." (9/13/17 Tr. 78). This was also proper for the trial court to consider. Based on the context of the testimony, the extraction procedure was performed or at least discussed in February of 2017, which is after the date the divorce decree was issued.

**{¶39}** Regarding appellant's interference with appellee's visitation, the GAL's report indicated that appellant was publicly making disparaging remarks concerning appellee and his parenting skills. The trial court's April 12, 2018 judgment entry also references incidents where appellant would call the children multiple times when they were with appellee, sent gifts to the children at appellee's home, and sent a photo album of herself and her children to appellee's home.

**{¶40}** Appellant argues that these events were addressed at a hearing in 2016. But there is no transcript of a hearing in 2016 that is part of the record. There is also no filing in 2016 that references appellant interfering with appellee's visitation with the children. This is also an unknown circumstance that is appropriate for the trial court to consider pursuant to R.C. 3109.04(E)(1)(a).

**{¶41}** Appellant argues that this Court's decision in *Burnip v. Nickerson*, 7th Dist. No. 07-CO-42, 2008-Ohio-5052 bars the trial court's consideration of the previously mentioned five events. In *Burnip*, this Court held that many of the arguments Nickerson made in support of her motion for reallocation were events that happened prior to the dissolution between the parties. *Id.* at ¶ 40.

**{¶42}** *Burnip* is factually distinguishable from the case at bar. While some of the events that were testified to at the motion to reallocate hearing occurred prior to the divorce decree being issued, many of those events were previously unknown to the trial court. Unknown circumstances that occur prior to a decree assigning parental rights are proper for a trial court to consider pursuant to R.C. 3109.04(E)(1)(a).

**{¶43}** In conclusion, after a review of the record, the trial court's judgment granting appellee's motion for reallocation of parental rights and responsibilities is supported by competent and credible evidence.

**{¶44}** Accordingly, appellant's sole assignment of error lacks merit and is overruled.

**{¶45}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P. J., concurs

Bartlett, J., concurs

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Domestic Relations of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**