# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

IN THE MATTER OF: C. R. W., MINOR CHILD,

B. A. R.,

Plaintiff-Appellant,

v.

A. N. W

nka A. N. G.,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 JE 0002

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio
Case No. 2007 PA 00083

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Mary Corabi,* Corabi Law Office, 424 Market Street, Steubenville, Ohio 43952.
*Atty. Aaron Richardson,* Blake, Bednar, Blake & Richardson, 4110 Sunset Boulevard, Steubenville, Ohio 43952, for Plaintiff- Appellant and

*Atty. Peter Olivito,* 606-612 Sinclair Building, 100 North Street, Steubenville, Ohio 43952, for Defendant- Appellee.

Dated: June 19,2019

_____

**D'APOLITO, J.**

{¶1}    Appellant, B.A.R. appeals the judgment entry of the Jefferson County Court of Common Pleas, Juvenile Division, overruling his Motion for Reallocation of Parental Rights and Responsibilities.  For the following reasons, the judgment entry of the trial court is reversed and this matter is remanded for a detailed analysis of the best interests of the child and, if applicable, an analysis of the potential benefits/harm resulting from a change in custody.

## **PROCEDURAL HISTORY**

{¶2}    On August 27, 2018, Appellee, A.N.W. nka A.N.G. filed a handwritten notice in the Juvenile Court of Jefferson County, Ohio, of her intent to marry R.G., a member of the United States Air Force stationed in Okinawa, Japan, and to move the parties' then eleven-year old daughter, C.R.W., to Okinawa in late December 2018 or early January 2019.  Appellee is the residential parent of C.R.W.  The notice included a proposed modification to Appellant's parenting time schedule.  The trial court scheduled the matter for a hearing on October 15, 2018.

{¶3}    On October 12, 2018, Appellant filed the Motion for Reallocation of Parental Rights and Responsibilities currently before this Court, alleging that Appellee's proposed move from Jefferson County, Ohio, to Okinawa, Japan, was a change in circumstances, and it was in the best interest of C.R.W. to remain in Jefferson County, Ohio in Appellant's custody.

{¶4}    At the hearing on the notice to relocate, which was conducted by the Magistrate on October 15, 2018, Appellant argued that Appellee's relocation to Japan was not in C.R.W's best interest.  Appellant argued that C.R.W. did not appreciate the limited contact she would have with him and her extended family following the move, and that she was not mature enough to understand the impact of living with Appellee and J.G. in Japan.  In a Decision dated October 17, 2018, the Magistrate determined that it was in

C.R.W's best interest to modify the parenting time schedule based upon Appellee's intent to relocate to Japan.

{¶5}   Appellant's visitation with C.R.W. was modified as follows:  Easter break, summer break, and either Thanksgiving or Christmas break, to alternate each year. Further, Appellant may visit C.R.W. in Japan at any time provided a two-week notice is given to Appellee. Finally, if Appellant is capable of visiting C.R.W. in Los Angeles or Seattle during C.R.W.'s long weekends, Appellee and C.R.W. will travel to the United States for those visits.   (11/1/18 J.E., p. 1).

{¶6}   No objection was filed to the modified parenting time schedule and it was incorporated into a judgment entry filed on November 1, 2018.  The transcript of the hearing is not in the record.  No appeal from the judgment entry modifying the parenting time schedule was taken.

{¶7}   A hearing on the motion to reallocate parental rights was conducted by the Magistrate on November 7, 2018. Appellant testified and presented testimony from C.R.W.'s maternal grandfather and paternal grandmother.  Appellee testified on her own behalf but did not call any additional witnesses.  The trial court conducted an in-camera interview with C.R.W. on November 17, 2018.

{¶8}   In a Decision dated November 19, 2018, the Magistrate determined that a change in circumstances had occurred, because C.R.W. was much older than when the original custody determination was made.  After a brief recitation of the facts in the record and the arguments of both parties, the Magistrate summarily concluded that a change in custody was not in C.R.W.'s best interest, but, instead, that it was in her best interest to remain in the custody of her mother.

{¶9}   On November 26, 2018, Appellant filed a Request for a Transcript of the hearing held on November 7, 2018, as well as a Request for Findings of Fact and Conclusions of Law.  The Magistrate issued his Findings of Fact and Conclusions of Law on November 29, 2018, which contained a more detailed restatement of the facts and arguments advanced at the hearing, but absolutely no analysis of the factors set forth in R.C. 3109.04(F)(1).

{¶10} Appellant filed Objections to the Magistrate's Decision on December 12, 2018. Supplemental Objections to the Magistrate's Decision, which included citations to

the transcript, were filed January 15, 2019. Appellee filed a response to Appellant's Objections on January 11, 2019, and a response to Appellant's Supplemental Objections was filed on January 23, 2019. The trial court overruled Appellant's objections and adopted the Magistrate's Decision in a Judgment Entry on January 29, 2019. The Judgment Entry simply restated the magistrate's conclusion memorialized in his November 19th Decision. This timely appeal followed.

## FACTS

{¶11} C.W.R. was born on February 7, 2007, and was eleven years old at the time of the hearing. The parties never married. Custody and visitation were originally established in 2007 and no issues regarding custody or parenting time had been raised prior to the current controversy. Appellee has been the custodial parent and Appellant has had parenting time every other weekend and every Wednesday. Appellant exercised his summer parenting time only once, during his short-lived marriage. The parties agree that they have been able to work together parenting C.W.R.

{¶12} C.R.W. is a life-long resident of Jefferson County, Ohio. On the hearing date, Appellee and C.R.W. were living with C.R.W.'s maternal grandmother in Toronto, Ohio. Appellee conceded that C.R.W. has a strong bond with both her maternal grandmother and her maternal step-grandmother, and that her paternal grandparents are very active in her life. C.R.W. frequently spent weekends at the home of her maternal grandfather and step-grandmother, where she has her own bedroom. C.R.W. has aunts, uncles, and cousins on both sides of her family that reside in Jefferson County, Ohio.

{¶13} Appellee conceded that she has relied on her family to help raise C.R.W., and that C.R.W's close relationships with her extended family play a positive role in C.R.W.'s life. Appellant agreed that both sides of C.R.W.'s extended family play a substantial role in her daily life.

{¶14} In addition to having close family ties in Jefferson County, Ohio, C.R.W. is happily engaged in her school and community. C.R.W. gets high grades in school. She has been active in Destination Imagination, ballet, softball, and orchestra. Appellant is her softball coach. Appellee conceded that C.R.W. has close friends in Jefferson County, Ohio, and that her friends are positive influences.

{¶15} Appellee had maintained a long-distance relationship with J.G. for approximately two years at the time of the hearing. They were married approximately one month prior to the hearing. They had never lived together because J.G. has been stationed overseas for the entirety of their relationship.

{¶16} J.G. had been stateside three times during his relationship with Appellee, for approximately one month each time.  During those visits, J.G. had helped C.R.W with her homework, took her out to dine, and participated in disciplining her. In addition to the three months that J.G. was in the United States, Appellee and C.R.W. traveled to Japan to visit J.G. for thirteen days. J.G. has no children of his own.

{¶17} Appellee testified that military families are a tightly-knit group and C.R.W. would be attending a school where all of the students are children of American servicemen and servicewomen.  Appellee was confident that she would be employed in an administrative position at a hospital on Kadena Air Base and that C.R.W. would participate in an after-school program there.  On the date of the hearing, Appellee had intiated paperwork to enroll C.R.W. at Kadena Middle School, but Appellee conceded that C.R.W. might be enrolled in Ryukyu Middle School, also located on the air base, depending upon the occupancy at Kadena.

{¶18} Appellee testified that the move to Japan creates a unique opportunity for C.R.W. to experience another culture.  When asked if she would be going to Japan if she and J.G. had not married, Appellee responded that she and C.R.W. "wanted to go [to Japan] before but [ ] weren't able to.  So, it [had] nothing to do with what [was] best for [Appellee]." (11/7/2018 Hearing Tr. ("Tr.")  20.)  J.G. lived in an apartment in the city, but Appellee testified that the couple was considering a move onto the base.

{¶19} Appellee explained that Thanksgiving vacation is shorter than Christmas, and would require Appellee and C.R.W. to depart from Okinawa on Wednesday night, then return on Sunday in order for C.R.W. to attend school on Monday morning.  A typical flight is sixteen hours in duration, and there is a thirteen-hour time difference.

{¶20} J.G.'s tour of duty was originally from May 2017 until May 2020.  However, if Appellee and C.R.W. are added to J.G.'s military orders, his tour will be extended through May 2021.  Appellee testified that she would not move to Japan if Appellant was awarded custody of C.R.W.

Case No. 19 JE 0002

**{¶21}** Appellee reiterated several times during her testimony that C.R.W. wants to move to Japan. Appellee testified that she and J.G. considered allowing C.R.W. to complete the 2018-2019 school year in Jefferson County, but C.R.W. had asked the day before the hearing if she could begin packing for Japan. Appellee testified, "She is very ready to go now." (Tr. 18).

**{¶22}** Appellant testified that he works alternating shifts at Arcelor Mittal (Weirton Steel), one week on "daylight" shift (5:30-1:30) and the next on "afternoon" shift (11:30-7:30). When Appellant was scheduled to work the afternoon shift, his mother took C.R.W. for her Wednesday visitation. Appellant expressed concern regarding C.R.W.'s health and welfare based on the modified parenting schedule, as C.R.W. would be subject to a rigorous travel schedule during the holidays and spring break. He further testified that he accumulates only two weeks of vacation per year, which would foreclose any opportunity to visit C.R.W. in Japan, California, or Seattle.

**{¶23}** Appellant also expressed concern about the relocation because Appellee and J.G. have never lived together, and J.G. has never lived with a child. Based on conversations with C.R.W., Appellant does not believe C.R.W. is mature enough to appreciate the concept of living in Japan, particularly because her eagerness to relocate is predicated solely on her experiences during a thirteen-day vacation.

**{¶24}** Although Appellant conceded that Appellee is a good mother, he questioned her decision to move C.R.W. to Japan. He expressed concern for C.R.W's safety, but Appellee countered that Japan is among the top ten safest countries, while the U.S. is in the fifties.

**{¶25}** Appellant's mother testified that she recently retired and would assist Appellant with C.R.W.'s care should he be granted custody. Appellant's mother explained that she would be available to take C.R.W. to doctor's appointments, and care for her should she need to stay home from school due to illness or injury. Appellee's family would also continue to participate in her care should Appellee chose to move to Japan without C.R.W.

**{¶26}** Appellant testified that his mother would be able to discuss any women's issues that C.R.W. may be uncomfortable discussing with him. Appellee testified that she has already had "talks" with C.R.W.

**{¶27}** It is important to note that no guardian ad litem was appointed in this case, and, as a consequence, no background investigation of J.G. was undertaken. Further, no expert testimony was offered by either party regarding C.R.W's life in Japan. In addition to the hearing transcript, we reviewed the transcript of the Magistrate's in-camera interview with C.R.W.

## LAW

**{¶28}** The juvenile court exercises its jurisdiction in child custody matters in accordance with R.C. 3109.04. R.C. 2151.23(F)(1). In determining a motion for reallocation of parental rights, R.C. 3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> * * *
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶29}** Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the trial court is required to find that: (1) a change in circumstances has occurred since the prior custody order; (2) the change in custody is in the child's best interests; and (3) the benefits of the change in custody outweigh the harm caused by the change. *Miller v. Miller*, 7th Dist. Jefferson No. 18 JE 0007, 2018-Ohio-4018, ¶ 16, citing *Vella v. Vella*, 7th Dist. Jefferson No. 10-JE-7, 2011-

Ohio-1182, ¶ 23. Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604, 737 N.E.2d 551 (7th Dist.2000).

**{¶30}** R.C. 3109.04(F)(1) sets forth a non-exclusive list of factors to be considered in determining the best interest of the child. Relevant to the above-captioned case, the trial court was required to consider:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

* * *

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶31}** A determination of legal custody by the juvenile court will only be reversed for an abuse of discretion. *In re C.A.C.J.*, 7th Dist. Belmont No. 18 BE 0010, 2018-Ohio-4501, ¶ 7, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 421, 674 N.E.2d 1159 (1997). The term abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶32}** As "[c]ustody issues are some of the most difficult and agonizing decisions a trial judge must make," the trial court is given "wide latitude in considering all the

evidence." *Davis* at 418. We must presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis* at 419.

## ANALYSIS

**{¶33}** Appellant advances two assignments of error, which are taken out of order for clarity of analysis:

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN FAILING TO IDENTIFY THE RESIDENTIAL PARENT'S MOVE FROM OHIO TO JAPAN AS A CHANGE IN CIRCUMSTANCES.**

**{¶34}** A trial court asked to re-designate parental rights and responsibilities is required to first find that a change in circumstances occurred to warrant a change in legal custodianship. Although R.C. 3109.04 does not provide a definition of the phrase "change in circumstances," we have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Rohrbaugh,* supra, 136 Ohio App.3d at 604-05. In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change," but, on the other hand, need not be "substantial." *Davis*, 77 Ohio St.3d at 417-418, 674 N.E.2d 1159.

**{¶35}** The trial court has broad discretion in determining whether a change in circumstances has occurred, but that discretion is not unlimited. *In re Jeffreys*, 7th Dist. Belmont No. 01-BA-4, 2002-Ohio-703, *4. " '[A] trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change.' " *Id.*, quoting *Davis* at paragraph two of syllabus.

**{¶36}** Appellant contends that the trial court abused its discretion when it did not find that Appellee's relocation to Japan constituted a change of circumstances. We have observed that relocation by itself is not sufficient to be considered a change in circumstances, but it is a factor in such a determination. *Williamson v. Williamson*, 7th Dist. Jefferson No. 16 JE 0022, 2017-Ohio-1082, 87 N.E.3d 676, ¶ 25, citing *Rohrbaugh* at 604-605. "[S]ince a child is almost always going to be harmed to some extent by being moved, the non-custodial parent should not be able to satisfy his or her burden simply by showing that some harm will result; the amount of harm must transcend the normal and expected problems of adjustment." *Id.*, quoting *Schiavone v. Antonelli*, 11th Dist. Trumbull No. 92-T-4794, 1993 WL 548034 (Dec. 10, 1993).

**{¶37}** Having considered the record, we find that the trial court acted unreasonably when it concluded that Appellee's decision to relocate to Japan with J.G. was not a change in circumstances. First, C.R.W. will be living on another continent on the opposite side of the globe. Second, she will be residing with a man with whom Appellee herself has only spent roughly 100 days, and of whom the trial court performed no background investigation. In addition to the culture change and isolation, the parenting plan requires C.R.W. to travel from Japan to the U.S. at least three times per year. The facts in this case present a unique situation where an "abrupt disruption of [C.R.W.'s] home life" will occur whether or not reallocation of custody is granted. Accordingly, we find that the harm that may result from Appellee's relocation, and the attendant circumstances surrounding Appellee's relocation, transcends the normal and expected problems of adjustment with relocation in the United States.

**{¶38}** Although not raised on appeal, we further find that the trial court acted unreasonably when it concluded that C.R.W's age alone constituted a change of circumstances. The Ohio Supreme Court has long recognized that age alone is not sufficient to establish a change of circumstances. *Davis* at 420, 674 N.E.2d 1159.

**{¶39}** Accordingly, we find that Appellant's second assignment of error has merit; a change of circumstances has occurred based on the facts surrounding Appellee's intent to relocate to Okinawa, Japan. We further find that the trial court abused its discretion in concluding that Appellant's change in age alone constituted a change in circumstances.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO REMAIN IN THE CUSTODY OF APPELLEE.**

**{¶40}** Appellant correctly argues that the trial court failed to engage in any analysis of the "best interest" factors enumerated in R.C. 3109.04(F), or even mention subsection (F) of the statute. Instead, the Magistrate simply concluded without explanation that "a modification of custody is not in the child's best interests," and "the child's best interests will be served by remaining in the care, custody, and control of the mother." (11/29/2018 Findings of Fact and Conclusions of Law, p. 2).

**{¶41}** The Magistrate did not consider that the life of an eleven-year-old child will be completely upended by the international relocation, and that she will be living with a man with whom she has only spent three months (30 days at a time), and one two-week vacation. She will be instantly separated from every member of her support system, with the exception of her mother, because the thirteen-hour time difference will make communication with family and friends in Jefferson County, Ohio very difficult. Finally, she will be subject to an incredibly demanding travel schedule during the holidays and spring break.

**{¶42}** Further, in the absence of the appointment of a guardian ad litem, a background investigation of R.G., or any expert testimony regarding C.R.W.'s ability to adjust to the culture and isolation of Okinawa, the Magistrate's interview with C.R.W. was insufficient. The Magistrate did not demonstrate any effort to understand C.R.W.'s level of maturity, her experiences during her thirteen-day visit to Japan, or her connection to her extended family in Jefferson County, Ohio.

**{¶43}** The record in this case raises several additional concerns. First, C.R.W. appears to be parroting her mother's statements regarding the opportunity to experience another culture, as well as her description of C.R.W's relationship with J.G. Second, C.R.W.'s affinity for Japan is based in its entirety on the recreational activities she enjoyed

on her thirteen-day vacation. Finally, and most importantly, Appellant correctly argues that an eleven-year old is incapable of appreciating the culture change and the isolation she will experience in Japan.

{¶44} In *In re Jeffreys, supra*, we remanded a custody case to the trial court for reconsideration of the statutory "best interest" factors where the trial court's judgment did not even mention R.C. 3109.04(F) or the factors enumerated therein. Relevant to the above-captioned case, we observed:

> [T]he magistrate's decision does not evaluate even one of the specific factors mentioned in R.C. § 3109.04(F)(1). In fact, R.C. § 3109.04(F) is not mentioned in the magistrate's decision or the trial court's subsequent judgment entry. The trial court's adoption of the magistrate's decision does not add any further explanation as to why it was in [D.'s] best interests for Appellant to become the sole residential parent. It is difficult to conclude from the record that the trial court specifically considered any of the individual factors set forth in R.C. § 3109.04(F)(1).

*Id.* at *7. The same is true here.

{¶45} Appellee argues that *In re Jeffreys* is distinguishable because the trial court granted the motion for reallocation of parental rights in that case. Appellee argues that we predicated reversal and remand in *In re Jeffreys* on the trial court's failure to rebut the presumption in favor of retaining the original residential parent. *Id.* at *8. Although the rebuttable presumption may support the decision of the trial court in this case, we find that the potential harm to C.R.W. resulting from the intended relocation and its surrounding circumstances is considerable, and was not addressed, nor even mentioned, in the judgment entry. Accordingly, we find that Appellant's first assignment of error has merit, and the trial court acted arbitrarily when it summarily concluded that reallocation of parental rights was not in C.R.W.'s best interest.

**CONCLUSION**

**{¶46}** In summary, we find that the trial court acted unreasonably in concluding that a change in circumstances occurred in this case based on Appellant's change in age, rather than the circumstances surrounding Appellee's intent to relocate to Japan. We further find that the trial court acted arbitrarily when it did not consider the factors in R.C. 3109.04 in determining C.R.W.'s best interest. Therefore, the judgment entry of the trial court is reversed, and this matter is remanded for a detailed consideration of the best interests of the child and, if applicable, an analysis of the potential benefits/harm resulting from a change in custody.

Waite, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**